1

2

3

4

5

<u>6</u>

7

8

9

10

11

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 12   EARL WARNER, | Case No.  1:12-cv-01146-LJO-MJS (PC) |
| 13          Plaintiff, | FINDINGS AND RECOMMENDATION REGARDING  EXHAUSTION OF |
| 14      v. | ADMINISTRATIVE REMEDIES |
| 15   M. CATE, et al., | |
| 16          Defendants. | |

17

18

19

20   **I.      PROCEDURAL HISTORY**

21         Plaintiff is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil

22   rights action brought pursuant to 28 U.S.C. § 1983.  (ECF No. 1 & 7.)  The action

23   proceeds on an Eighth Amendment failure to protect claim against Defendants Walker,

24   Davis[1], Prokop, Spralding, and Fellows.  (ECF No. 12.)

25         On August 18, 2014, Defendants filed a motion for summary judgment on

26   exhaustion grounds.  (ECF No. 41.)  Plaintiff opposed the motion.  (ECF No. 57.)

27

28   ────────────
[1] Formerly Defendant D. McGaha.

Defendants filed a reply.  (ECF No. 58.)

On May 19, 2015, the Court issued Findings and Recommendations to deny Defendants' motion for summary judgment and to hold an evidentiary hearing on the issue of exhaustion pursuant to *Albino v. Baca*, 747 F.3d 1162, 1170-71 (9th Cir. 2014) ("If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue").  (ECF No. 59.)  On June 9, 2015, the District Court adopted the Findings and Recommendations. (ECF No. 65.)

On September 4, 2015, the Court held an evidentiary hearing on the issue of exhaustion of Plaintiff's administrative remedies, and the Court limited the issues to: (1) whether Plaintiff had the opportunity to submit his initial grievance, Appeal Log. No. PVSP-O-12-00872, within thirty days of the events giving rise to his failure to protect claim, as required by Cal. Code Regs., tit. 15, § 3084.8(b)(1); (2) whether Plaintiff's Appeal No. PVSP-O-12-00872 was improperly rejected based on Plaintiff's failure to allege a material adverse effect on his welfare; (3) whether Plaintiff's Appeal Nos. RJD-B-12-00796 and RJD-B-12-01098 were improperly cancelled as untimely; and (4) whether Plaintiff had a reasonable, good faith belief that the administrative appeals process was effectively unavailable to him.  (ECF Nos. 75, 80.)

At the evidentiary hearing, Defendants called two witnesses: Robert Cobb, a retired Richard J. Donovan Correctional Facility ("RJD") Appeals Coordinator, who appeared by video conference from Tyler, Texas, and Jane Morgan, Correctional Counselor Specialist for Appeals at Pleasant Valley State Prison ("PVSP").  (ECF No. 80.)  After hearing testimony, the Court continued the matter to allow the parties to present Plaintiff's medical records from January and February 2011 and to identify the portions of the records that each believed supported its position.  (ECF No. 80.)

On October 1, 2015, Defendants submitted Plaintiff's medical records along with

their briefing statement.  (ECF Nos. 84, 85.)  Plaintiff provided additional medical records with his statement.  (ECF Nos. 87, 88, 89.)  On December 9, 2015, Defendants filed approximately three hundred supplemental pages of medical records and an additional statement identifying the portions of the records that they believe support their position.  (ECF No. 92.)

After reviewing the medical records and the parties' statements, the Court finds that the matter is now ready for issuance of Findings and Recommendations as to whether Plaintiff exhausted available administrative remedies as to his claims in this action.

## II.    LEGAL STANDARD – EXHAUSTION

The Prison Litigation Reform Act ("PLRA") stipulates, "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Therefore, prisoners are required to exhaust all available administrative remedies prior to filing suit.  *Jones v. Bock*, 549 U.S. 199, 211 (2007).

"The primary purpose of a [prisoner's administrative] grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation."  *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009).  "A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved.  A grievance also need not contain every fact necessary to prove each element of an eventual legal claim."  *Id.*  Instead, the grievance must alert "'the prison to the nature of the wrong for which redress is sought,'" *id.* at 1120 (*quoting Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)), and must give the prison an opportunity "to reach the merits of the issue."  *Id.* at 1119.

A motion for summary judgment is the proper means to raise a prisoner's failure to exhaust administrative remedies.  *Albino*, 747 F.3d at 1166.  Defendants have the

burden of proving Plaintiff failed to exhaust available administrative remedies.  *Id.*  A defendant's burden of establishing an inmate's failure to exhaust administrative remedies has been characterized by the Ninth Circuit as "very low."  *Albino v. Baca*, 697 F.3d 1023, 1031 (9th Cir. 2012).  The "defendant need only show the existence of . . . [a grievance procedure] that the plaintiff did not use."  *Id.* (*citing Hilao v. Estate of Marcos*, 103 F.3d 767, 778, n.5 (9th Cir. 1996)).

"If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."  *Albino*, 747 F.3d at 1166.  If material facts are disputed, summary judgment should be denied, and the district court should decide "disputed factual questions relevant to exhaustion . . . in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue."  *Id.* at 1170-71.

A Plaintiff can demonstrate that administrative remedies were effectively unavailable to him when he attempts to comply with the process, but is "thwarted by improper screening."  *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010).  In order to demonstrate this exception applies, the plaintiff "must establish (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations."  *Id.* at 823-24.  Plaintiff may also show that the process was unavailable to him because he lacked access to the grievance forms or the ability to fill them out within the applicable time period, s*ee Marella v. Terhune*, 568 F.3d 1024, 1027-1028 (9th Cir. 2009), or "repeated rejections of [his] grievances at the screening stage g[a]ve rise to a reasonable good faith belief that administrative remedies [were] effectively unavailable" to him.  *Sapp*, 623 F.3d at 826.

Prior to January 28, 2011, an inmate initiated the administrative grievance process within the California Department of Corrections and Rehabilitation ("CDCR") by

submitting a CDC Form 602 describing the problem and the action requested. Cal. Code Regs. tit. 15, § 3084.2(a). An appeal had to be submitted within fifteen working days of the event being appealed or of the receipt of the unacceptable lower level decision. Tit. 15, § 3084.6(c). Up to four levels of appeal may be involved, including the informal level, first formal level, second formal level, and third formal level, also known as the Director's Level. Tit. 15, § 3084.5. On January 28, 2011, the inmate appeals process was modified and limited to three levels of review with provisions allowing the first level to be bypassed under specific circumstances. Tit. 15, § 3084.7. An inmate now had thirty days from the "occurrence of the event or decision being appealed" to submit his appeal. Tit. 15, § 3084.8(b)(1).

## III.   PLAINTIFF'S CLAIMS

Plaintiff complains in his First Amended Complaint ("FAC") that on January 19, 2011 at his initial classification hearing, he informed Defendants of his concerns about threats from the Northern Riders gang and their leader at PVSP, inmate Sordia. (ECF No. 10.) Defendants acted with hostility and deliberate indifference towards Plaintiff and informed Plaintiff "he was 'out of other places to go.'" (ECF No. 10 at 8.) Defendant Walker placed Plaintiff in a holding cell adjacent to Sordia. Sordia denied any animosity, and Defendants approved Plaintiff for general population housing in the same unit as inmate Sordia.

Prisoners affiliated with Sordia loitered outside Plaintiff's cell during meal breaks. Eventually, Plaintiff suffered a nervous breakdown and was transferred because of self-inflicted lacerations to his wrists.

## IV.   ANALYSIS AND FINDINGS ON EXHAUSTION

As noted above, the Court identified the following issues to be addressed at the evidentiary hearing: (A) whether Plaintiff had the opportunity to submit his initial grievance, Appeal Log. No. PVSP-O-12-00872, within thirty days of the events giving rise to his failure to protect claim, as required by Cal. Code Regs., tit. 15, §

3084.8(b)(1)[2]; (B) whether Plaintiff's Appeal No. PVSP-O-12-00872 was improperly rejected based on Plaintiff's failure to allege a material adverse effect on his welfare; (C) whether Plaintiff's Appeal Nos. RJD-B-12-00796 and RJD-B-12-01098 were improperly cancelled as untimely; and (D) whether Plaintiff had a reasonable, good faith belief that the administrative appeals process was effectively unavailable to him.  The Court will address each in turn.

### A.      Plaintiff's Inability to Submit a Grievance within Thirty Days

The event which gave rise to the Eighth Amendment claim in Plaintiff's FAC occurred on January 19, 2011.  (ECF No. 10.)  Plaintiff filed his original complaint on July 12, 2012, and his FAC on May 10, 2013.  (ECF Nos. 1 & 10.)  While housed at PVSP, Plaintiff submitted appeal PVSP-O-12-00872 on December 12, 2011, eleven months after the incident giving rise to his claims occurred.  Defendants argue that because this appeal was untimely, Plaintiff failed to properly exhaust his administrative remedies; thus, the Court need not consider any potential subsequent errors in screening Plaintiff's appeals.  Plaintiff argues that he could not file a grievance within the first thirty days because "by doctor's orders", he was not allowed to wear eyeglasses, possess writing utensils, or have access to CDCR forms.[3]  (ECF No. 78 at 10-11.)

The regulations in effect at the time that Plaintiff filed his appeal provided that an appeal could be cancelled as untimely if the inmate failed to file within thirty days of the

---

[2] When Plaintiff filed his first appeal on December 12, 2011, prison regulations required that the appeal be submitted within thirty days from the event being appealed. Tit. 15, § 3084.8(b)(1). However, when the incident that Plaintiff complains of occurred on January 19, 2011, the timeframe for submitting appeals was limited to fifteen days. Tit. 15, § 3084.6(c). The Court applies the regulations in effect at the time Plaintiff filed his initial appeal PVSP-O-12-00872.  *See Sapp*, 623 F.3d at 824; *see also Jones*, 549 U.S. at 218; *see also Jones v. Washington*, 2011 U.S. Dist. LEXIS 108606, at *7 n. 2 (N.D. Cal. Sept. 23, 2011) (applying regulations in effect at time inmate filed his grievance). However, the Court's decision would be the same under either timeframe.

[3] In addition, Plaintiff included a letter with his initial grievance stating that due to his "mental and emotional condition," and unspecified side effects of medications, he had not been able to obtain a copy of his CDCR 128G Chrono to submit with the grievance. (ECF No. 20-3 at 15.) Per CDCR regulations, Plaintiff's failure to have all supporting documentation is not an excuse for failing to timely file. Tit. 15, § 3084.3(b).

event being appealed and "had the opportunity to submit" it within that time.  Tit. 15, § 3084.6(c)(4).  CDCR regulations give the appeals coordinator or third level Appeals Chief the discretion to accept an appeal for further review when there is "information, such as documentation from health care staff that the inmate or parolee was medically incapacitated and unable to file, supporting the conclusion that the appeal should be subject to further review."  Tit. 15, § 3084.6(a)(4); *see also* CDCR Dep't. Operations Manual, Art. 53, § 54100.16.  Mr. Cobb confirmed that if an inmate submitted an appeal beyond the requisite thirty days, the assigned appeals coordinator had the discretion to accept the appeal.

It is undisputed that an administrative grievance procedure existed at the time of the incident and that Plaintiff failed to timely file an appeal.  Plaintiff argued that because of his psychiatric state, he did not have the mental capacity to file a grievance and he was, in any event, denied the materials needed to file such an appeal.  He submitted medical records consistent with this argument. The Court finds Plaintiff's argument and supporting evidence persuasive and concludes that administrative grievance procedures were effectively unavailable to Plaintiff.

Plaintiff's medical records indicate that from January 20, 2011 to February 15, 2011, Plaintiff was housed at PVSP on suicide watch and denied access to anything beyond a mattress, suicide gown, and a blanket.  (ECF No. 89.)  On January 20, 2011, Plaintiff displayed "unclear – nonverbal. suicidal behavior."  (ECF No. 92, S205.)[4]  He rubbed his right leg, and rocked back and forth, "appearing to self soothe."  (*Id.*)  Beginning February 10, 2011, Plaintiff gained access to the shower but only at the discretion of staff.  (ECF No. 89 at 35.)  On February 12, 2011, he received a second blanket.  (ECF No. 89 at 24, 36.)  Plaintiff's February 15, 2011 discharge notes indicate that he was functioning at a GAF of 25[5] and that he had "[m]inimal improvement from

---

[4] The page numbers are the bate stamps reflected on the medical records provided to the Court by defense counsel.
[5] The Court takes judicial notice of the GAF (Global Assessment Functioning) scale in the DSM-IV-TR.  *See United States v. Murdoch*, 98 F.3d 472, 479 (9th Cir. 1996) (taking judicial notice of the DSM-IV

time of admission" and "remained unstable."  (ECF No. 92, S185-186.)

While a February 2nd medical classification chrono indicates Plaintiff was approved for full duty work and was assessed as a low medical risk, it also incorrectly indicates that Plaintiff was receiving outpatient care.  (ECF No. 84, 016-017.)  Plaintiff was actually admitted to the "CTC" unit[6], and was not being seen on an outpatient basis.  (ECF No. 92, S185-186; ECF No. 84, 003.)  There are no other records which would suggest Plaintiff had access to the materials necessary to file a grievance on that date.

On February 15, 2011, Plaintiff was transferred to the Department of Mental Health Acute Psychiatric Care facility at Vacaville to receive a higher level of care.  (ECF No. 92, S015.)  Plaintiff was again placed on "suicide precautions with nontear smock, nontear mattress."  (ECF No. 92, S010, S033, S088, S158.)  On February 16, 2011, Plaintiff was taken off "suicide precautions" but remained on limited issue of a nontear smock, mattress, and blanket until February 25, 2011 – a date beyond the thirty day period.  (ECF No. 92, S158-160.)  Records indicate that during this time period Plaintiff was soft spoken, had poor eye contact and provided minimal responses to questions.  (ECF No. 92, S088.)

It was not until after the thirty day time period, on February 25th, that Plaintiff was increased to "issue to blues" and allowed "reading materials."  (ECF No. 92, S036, S056.)  On that same date, Plaintiff "asked for clothing, a shave, reading glasses and a toothbrush."  (ECF No. 92, S037.)  The psychiatrist noted that "steps toward[s] increased issue and programming" were reviewed.  (*Id.*)  Plaintiff was to remain on the "current treatment plan and move toward as much programming as safety allow[ed]."

---

which contains the GAF scale); Fed. R. Evid. 201(a)-(b)(2).  A GAF of 25 means a person's "behavior is considerably influenced by delusions or hallucinations *or* serious impairment, in communication or judgment (*e.g.*, sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) *or* inability to function in almost all areas (*e.g.*, stays in bed all day, no job, home, or friends)."  *Jackson v. Duffy*, 2015 U.S. Dist. LEXIS 121539, at *13 n.6 (C.D. Cal. March 24, 2015).

[6] CTC is defined as "Patients do not require general acute care level of services but are in need of professionally supervised health care beyond that normally provided in the community on an outpatient basis."  (ECF No. 84, 017.)

1  (*Id.*)  He was given a referral to an optometrist for eye glasses.  (ECF No. 92, S056.)  As
2  of February 25, 2011, Plaintiff was functioning at a GAF score of 32.[7]  (*Id.*)

3         Defendants point to the fact that Plaintiff was attending and participating in
4  groups and going to the yard as an indication that Plaintiff was not impaired and had the
5  ability to submit a grievance.  However, Plaintiff was not attending groups or placed
6  back on full issue until after the thirty day period.  (*See* ECF No. 92, S019, S036, S038,
7  S042, S101.)  It also appears from Plaintiff's medical records that he was allowed use of
8  a pen to sign medical forms, but Defendants have not provided any evidence to show
9  that Plaintiff had use of writing utensils for other purposes, and given Plaintiff's limited
10 issue status, the records suggest that Plaintiff did not.  (*See, e.g.*, ECF No. 92, S188-
11 189, S198, S202.)

12         While the Court found both of Defendants' witnesses credible, neither Mr. Cobb
13 nor Ms. Morgan could state that they had <u>personal</u> knowledge that Plaintiff had the
14 mental ability and access to materials necessary to submit a grievance within the first
15 thirty days following the incident.  Plaintiff's sworn declaration, (ECF No. 78 at 10-12.),
16 and medical records reflect he did not.  Plaintiff's position is further bolstered by the fact
17 that he did not file any other appeal during the 30-day time period.  (ECF Nos. 20-2 at 5;
18 20-3 at 5-6; 20-4 at 5-8.).

19         For all the foregoing reasons,  the Court finds that Plaintiff lacked the opportunity
20 to timely file his grievance.  *See Marella*, 568 F.3d at 1027 (finding that if an inmate
21 lacks the opportunity to timely file a grievance when he does not have access to the
22 necessary forms or does not have the ability to complete them during the applicable
23 time period, his failure to file does not defeat his claim).

24 **B.    Improper Rejection of Appeal No. PVSP-O-12-00872**

25
26 [7] A GAF score between the range of 31 – 40 indicates an individual has "Some impairment in reality
   testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in
   several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed,
27 man avoids friends, neglects family, and is unable to work . . .)."  *Coats v. Colvin*, 2015 U.S. Dist. LEXIS
   133810, at *19 n. 2 (E.D. Cal. Sept. 30, 2015).
28

Plaintiff submitted appeal PVSP-O-12-00872 on December 12, 2011.  (ECF No. 20-2 at 20.)  On January 30, 2012, the appeal was rejected at the first level on the basis that Plaintiff failed to demonstrate a material adverse effect on his welfare pursuant to Tit. 15, § 3084.6(b)(2).  (ECF No. 20-2 at 18.)  A material adverse effect is defined as follows:

> . . . a harm or injury that is measurable or demonstrable, or the reasonable likelihood of such harm or injury.  In either case, the harm or injury must be due to any policy, decision, action, condition, or omission by the department or its staff.

Tit., 15, § 3084(c).

In Plaintiff's appeal, he alleges that at his initial committee hearing he informed staff that he felt threatened by certain inmates, he was then placed in a cell with one of the inmates and forced to discuss the issue, and later placed in the same unit as the inmate.  As a result, Plaintiff suffered a nervous breakdown and slit his wrists.

Plaintiff alleged a material adverse effect on his welfare when he claimed that the incident caused him to have a nervous breakdown and to slit his wrists.  The Court finds the appeal was improperly screened out.

## C.    Improper Cancellation of Appeal Nos. RJD-B-12-00796 and RJD-B-12-01098

On May 11, 2012, Mr. Cobb cancelled Appeal No. RJD-B-12-00796.  Mr. Cobb testified that he did not treat the appeal as a resubmission of Plaintiff's Appeal No. PVSP-O-12-00872.  He cancelled the appeal as untimely because the incident Plaintiff complained of occurred on January 19, 2011, which was more than thirty days before Plaintiff submitted the appeal at RJD.  Mr. Cobb did not believe that Plaintiff's incapacity was an issue.

Whether considered on first impression or as a resubmission of Appeal No. PVSP-O-12-00872, Appeal No. RJD-B-12-00796 was incorrectly cancelled as untimely.

Plaintiff noted in his appeal that he had been in a CTC facility for slitting his wrists and then was placed in a crisis bed at an acute care ward of DMH.  These facts were sufficient to put an appeals coordinator on notice that the appeal should have at least been subject to further review regarding Plaintiff's ability to submit the appeal during the requisite time period.  Additionally, as the Court found above, Plaintiff did not have the ability or the opportunity to file an appeal within the first thirty days, excusing the untimeliness of his appeal.

Likewise, Appeal No. RJD-B-12-01098 was incorrectly screened out.  Mr. Cobb testified that the appeal was cancelled as untimely based on the date of the original incident of January 19, 2011.  It was not treated as an appeal of the cancellation of Plaintiff's Appeal No. RJD-B-12-00796.  In briefing the motion for summary judgment, Defendants effectively conceded that Plaintiff's Appeal No. RJD-B-12-01098 was erroneously cancelled.

### D.      Reasonable      Belief      that      Administrative      Remedies      Effectively      Unavailable

It is undisputed that Plaintiff filed three prison appeals relevant to exhaustion of the claims raised in his FAC: PVSP-O-12-00872, RJD-B-12-00796, and RJD-B-12-01098.  If Appeals PVSP-O-12-00872 and RJD-B-12-00796 were not improperly screened out, then they would have exhausted Plaintiff's claims if pursued through all three levels.  Accordingly, the Court finds that Plaintiff has demonstrated that his administrative remedies were effectively unavailable, and Defendants have not met their burden that Plaintiff failed to properly exhaust.  *See Sapp*, 623 F.3d at 823-24 (a plaintiff need only establish that he filed a grievance that would have exhausted his claim if pursued through all levels and that prison officials improperly screened out the grievance).

Because the Court has determined that if Plaintiff's grievance was pursued through all levels it would have sufficed to exhaust his claim and that prison officials

screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations, the Court need not determine whether Plaintiff had a reasonable belief that his administrative remedies were effectively unavailable.

## V.   CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that Defendants have not met their burden that Plaintiff failed to exhaust his administrative remedies.  The Court HEREBY RECOMMENDS that the action remain open, and Plaintiff be allowed to proceed on the merits of his claims.

These Findings and Recommendation are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen** (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   Any reply to the objections shall be served and filed within **fourteen** (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (*citing Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   December 29, 2015          /s/ *Michael J. Seng*
                                                          UNITED STATES MAGISTRATE JUDGE

12