1

2

3

4

5

<u>6</u>

7

8

9

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARL WARNER, | Case No.  1:12-cv-01146-LJO-MJS (PC) |
| Plaintiff, | **FINDINGS AND RECOMMENDATION TO DENY PLAINTIFF'S REQUEST TO STAY PROCEEDINGS TO REOPEN DISCOVERY** |
| v. | |
| M. CATE, et al., | **(ECF No. 108)** |
| Defendants. | **FINDINGS AND RECOMMENDATION TO DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| | **(ECF No. 99)** |
| | **FOURTEEN (14) DAY OBJECTION DEADLINE** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983.  (ECF No. 1 & 7.)  This action proceeds on Plaintiff's first amended complaint ("FAC") against Defendants Walker, Davis[1], Prokop, Spralding, and Fellows for failure to protect in violation of the Eighth Amendment.  (ECF No. 10.)

---

[1] Formerly Defendant D. McGaha.

## I.   Procedural History

Before the Court is Defendants' March 7, 2016 motion for summary judgment. (ECF No. 99.)  On May 25, 2016, Plaintiff filed an opposition.  (ECF No. 108.)  Within Plaintiff's opposition was a request to stay the proceedings pursuant to Federal Rule of Civil Procedure 56(d), and to reopen discovery to allow Plaintiff to obtain additional evidence in opposition.  (ECF No. 108 at 6.) On June 8, 2016, Defendants filed a reply (ECF No. 111.)  In their reply, they objected to Plaintiff's request to reopen discovery on the ground that Plaintiff failed to show what facts would be revealed through further discovery that would refute the facts set forth in Defendants' summary judgment motion. (ECF No. 111.) These matters are deemed submitted.  Local Rule 230(*l*).

## II.   Factual Background

The following facts relevant to Defendants' summary judgment motion are found to be undisputed for purposes of this motion unless otherwise noted.[2]

In 2000, Plaintiff was classified as a Sensitive Needs Yard ("SNY") inmate and remained classified as such through February 2011.  (Warner Dep. 36:11-38:10.)  SNY inmates are housed in a separate designated yard, away from the general population. (Mathison Dec. (ECF No. 99-6) ¶ 3).

On October 18, 2005, after Plaintiff's former cellmate attacked inmate Robert Siordia, Siordia was listed as an enemy of Plaintiff.[3]  (Mathison Dec. Ex. B (ECF No. 99-8) at 3, "Oct. 18, 2005 General Chrono"; Fellows Dec. (ECF No. 99-10) ¶ 11; Warner Dep. 39:5-25.) Siordia felt Plaintiff should have warned Siordia of the impending attack.

---

[2] Defendants cite to Plaintiff's own statements, either made during his deposition or contained within his FAC, as support for a number of proffered facts. Plaintiff disputes many of these statements even when he is their source. Often, Plaintiff provides no reason for his objection, but simply states he needs further discovery to fully oppose each fact.

Defendants have supplied the Court with a hardcopy of Plaintiff's complete deposition transcript. Wherever possible, the Court has referred to it and other available evidence to confirm the validity of Defendants' undisputed facts.   Where Plaintiff's own statements are consistent with Defendants' characterization of facts, the Court has disregarded Plaintiff's objections.

[3] The papers filed in this case spell inmate Siordia's name as "Siordia" and "Sordia."  As Defendants' summary judgment motion uses "Siordia," the Court will use that spelling.

(Warner Dep. 39:5-25.) In April 2008, at Plaintiff's request, Siordia was removed from Plaintiff's enemy list.  (Warner Dep. 40:5-41:9; Fellows Dec. ¶ 11; Mathison Dec. Ex. B at 4, "Apr. 25, 2008 General Chrono.") At the time, Plaintiff stated he could be housed on any facility and had no issues with Siordia. (Warner Dep. 40:5-41:9.) However, in 2010, while Plaintiff was housed at Salinas Valley State Prison ("SVSP"), he learned members of the Northern Riders gang, of which Siordia was a leader, had threatened Plaintiff's life, (Warner Dep. 27:9-18),[4] and his concerns about Siordia were renewed. (Warner Dep. 42:1-13.)

From January 6, 2011 through February 14, 2011, Plaintiff was housed at PVSP. (Mathison Dec. Ex. B at 2, "Warner Chronological History.")  Prior to that, Plaintiff was incarcerated at SVSP. In January 2011, all Defendants were employed at PVSP. Defendant Walker was employed as a Correctional Captain. (Walker Dec. (ECF No. 99-4) ¶ 3.) Defendants Spralding, Davis, Fellows, and Prokop were employed as Correctional Counselors I. (Spralding Dec. (ECF No. 99-9) ¶ 3; Davis Dec. (ECF No. 99-5) ¶ 3; Fellows Dec. ¶ 3; Prokop Dec. (ECF No. 99-11) ¶ 3).

On January 19, 2011, Plaintiff appeared for his initial SNY review hearing before the PVSP Facility A Unit Classification Committee ("UCC").[5] (Warner Dep. 35:7-17.) One of the purposes of the hearing was to determine Plaintiff's placement within PVSP. CAL. CODE REGS. tit. 15 § 3376(d)(2).

Plaintiff claims that, during the hearing, he stated he had safety concerns at PVSP involving Siordia. (Warner Dep. 49:10-24.) According to Plaintiff, Siordia also was housed at PVSP (FAC (ECF No. 10) ¶ 13) and knew Plaintiff was there. (FAC ¶ 15.) Siordia had issued a verbal warning that Plaintiff would be attacked if he remained at

---

[4] Plaintiff states he shared these concerns with Salinas Valley officials before he was transferred to PVSP.  Their failure to respond formed the basis of a separate lawsuit that was filed in the Northern District of California. Warner v. Cate, No. 4:12-cv-06163-YGR. (Warner Dep. 23:6-26:15.)
[5] The parties dispute what occurred at the January 19, 2011 classification hearing that is the subject of this lawsuit.  However, Defendants have proffered Plaintiff's version of events solely for the purposes of this summary judgment motion; they argue that even if Plaintiff's version of events is taken as true, Defendants are still entitled to judgment as a matter of law.

PVSP.  (FAC  ¶ 15.)[6]

Plaintiff's enemy concerns with Siordia stemmed from issues that arose while Plaintiff was still incarcerated at SVSP. He had there learned that there was a "threat against [Plaintiff's] life" issued by the Northern Riders gang out of PVSP, of which Siordia was the leader.  (Warner Dep. 27:9-21.) Plaintiff believed the "two five" gang[7] at SVSP had been contacted by the Northern Riders.[8]  (Warner Dep. 50:8-15.) Plaintiff states he was transferred out of SVSP because of his fears that he would be attacked in SVSP at the Northern Riders' direction.  (Warner Dep. 27:9-21.)  In spite of Plaintiff's concerns, SVSP officials transferred Plaintiff to PVSP.  Id.

Siordia's name was not included on Plaintiff's confidential or non-confidential enemy list at the time of the hearing.  (Fellows Dec. ¶ 11; Warner Dep. 40:1-4).[9]

During the hearing, Plaintiff was told that if he could not program on Facility A, he would be placed in the segregated housing unit ("SHU").  (Warner Dep. 51:22-52:01; Warner Dec. ¶ 9 (ECF No. 108 at. 22).)[10]  Walker told Plaintiff he was "out of places to go" and had to "man up and go out there and do what [Plaintiff has] got to do."  (Warner Dep. 59:24-60:8.)

Plaintiff claims that, during the hearing, Walker instructed an officer to "go get" Siordia.  (Warner Dep. 51:22-52:10.)  Warner and Siordia were placed in adjacent holding cells, where they had a discussion in the presence of a Sergeant and another correctional officer (neither of whom are Defendants).  The Sergeant told Siordia Plaintiff had told prison officials that Siordia had sent a warning message to Plaintiff telling him he would face consequences if he came onto the yard at PVSP.  (Warner

---

[6] According to Defendants, Plaintiff did not raise any concerns regarding Siordia at the hearing and they were unaware of any such concerns. (Def.'s Mot. Summ J. at n. 2 (ECF No. 99-2.))

[7] It is the Court's understanding that the "two five" gang was a prison gang housed in the same SNY as Plaintiff at SVSP.

[8] The record before the Court does not reflect the exact impetus behind the renewed "bad blood" between Plaintiff and Siordia.

[9] Plaintiff objects to this fact, but the Court finds that it is supported by Plaintiff's own deposition testimony. (Warner Dep. 40:1-4; 40:15-41:1.)

[10] Plaintiff does not dispute that this statement was made, but characterizes it as a threat. (ECF No. 108 at 7.)

Dec. ¶ 11.)  According to Plaintiff, this amounted to the Sergeant telling Siordia Plaintiff had "snitched" on Siordia.[11]  (Warner Dec. ¶ 12).

Siordia denied having any animosity toward Plaintiff.  (FAC  ¶¶ 31-34; Warner Dep. 52:10-54:17; Warner Dec. ¶ 11.)[12] No Defendants were present during the conversation between Plaintiff, Siordia, and the Sergeant.  (Warner Dep.54:13-17.)  It is not clear that this conversation was relayed to Defendants.

As a result of the hearing, Defendants, or some of them, recommended Plaintiff be placed in Facility A. (Warner Dep. 57:25.)  According to Defendants, Facility A was the only SNY in PVSP.  (Fellows Dep. ¶ 9.)  According to Plaintiff, however, PVSP had two SNYs, Facility A and Facility B, and Plaintiff could have been placed on either yard. (Warner Dec. ¶ 13.) Plaintiff states that although Facility B was classified as a "Level III" yard, Defendants had discretion to place him there as an "irregular placement condition" pursuant to California Code of Regulations § 3375.2(a).[13]  Id.

After his conversation with Siordia in the holding cell, Plaintiff was moved directly to his former cell in Building 1 to retrieve his property; he never returned to the hearing room and was not present for any discussions, deliberations, or decision-making. (Warner Dep. 56:16-24; 58:15-18.)  He was then forcibly moved from Building 1 to Building 2 of Facility A, the same building where Siordia was housed.  (Warner Dep. 54:18-57:11.)[14]

Between January 19 and 20, 2011, several of Siordia's fellow gang members loitered outside of Plaintiff's cell; Plaintiff refused to leave his cell for meals out of fear. (Warner Dep. 65:14-66:21.)  On January 20, 2011, Plaintiff cut his left wrist with a razor.

---

[11] Defendants dispute that this disclosure amounted to Defendants' labeling Plaintiff a "snitch."
[12] Plaintiff disputes Defendants' version of these facts, however Plaintiff states in his deposition and FAC that he was placed in a holding cell adjacent to Siordia during the hearing, at which time Siordia denied having any animosity toward Plaintiff.
[13] The regulation states: "An inmate meeting one or more . . . administrative or irregular placement conditions, known as administrative determinants, may be housed in a facility with a security level which is not consistent with the inmate's placement score." CAL CODE REGS. tit. 15, § 3375.2(a).  The regulation goes on to list eleven placement conditions.  Plaintiff does not state which of these conditions he meets.
[14] Once again, Plaintiff disputes Defendants' version of the facts, however the Court finds these facts are supported by Plaintiff's deposition transcript.

He was never attacked by Siordia or any other inmate.  (Warner Dep. 67:1-18.)

According to Defendants, all enemy claims must be independently verified to ensure their veracity.  (Fellows Dec. ¶ 12.)  If an inmate raises enemy concerns, he will not be assigned a new housing location but instead will be placed in the SHU or returned to his old housing unit until the matter is resolved.  (Fellows Dec. ¶ 10; Walker Dec. ¶ 7.)[15]

There is some question in this case as to whether all of the named Defendants participated in Plaintiff's January 19, 2011 UCC hearing.  Under CDCR regulations, only three staff members were required to attend the UCC hearing to comprise a quorum.  CAL. CODE. REGS. tit. 15 § 3376(b).  Walker presided over the hearing as the Chairperson and Fellows participated as the Recorder.  (Walker Dec. ¶ 5; Fellows Dec. ¶ 5).  The Recorder was responsible for presenting Plaintiff's case to the UCC for consideration and preparing the UCC Form 128G to document the hearing.  (Fellows Dec. ¶ 5).  The names "Davis," "Prokop," and "Spralding" all appear on the January 19, 2011 Form 128G.  (Warner Dep. 34:16-20; Davis Dec. ¶ 5; Prokop Dec. ¶ 5; Spralding Dec. ¶ 5.)  Davis, Prokop, and Spralding do not recall the January 19, 2011 hearing and do not remember ever interacting with Plaintiff. (Davis Dec. ¶ 6; Prokop Dec. ¶ 6; Spralding Dec. ¶ 6.)

With the exception of Walker, Plaintiff did not know Defendants' names until he saw the January 19, 2011 Form 128G. (Warner Dep. 34:16-35:11.)[16] With the exception of Walker, Plaintiff could not match each Defendant's name with his or her face. (Warner Dep. 47:19-21.) Plaintiff does not recall how many staff members attended the January 19, 2011 hearing.  (Warner Dep. 47:8-19.)  He believes that, provided the

---

[15] Plaintiff disputes the two facts contained within this paragraph but does not provide any reason or factual basis to support this dispute.  Instead, Plaintiff requests additional discovery to prove an unspecified point.  (ECF No. 108 11-12.) As explained in the discussion below, the two disputed facts included within this paragraph, if true, would actually support Plaintiff's case.  As Plaintiff has provided no specific objections to these facts, the Court will deem them undisputed for the purposes of this motion.

[16] Plaintiff disputes this fact, however Plaintiff's own deposition transcript reflects he did not know the names of any Defendant before looking at the UCC Form 128G.

opportunity to actually see Fellows, Davis, Prokop, and Spralding, he would be able to state with specificity what each Defendant said and did during the hearing.  (Warner Dep. 48:11-20.)

## III.   Plaintiff's Motion to Stay the Proceedings to Reopen Discovery

The Court will first address Plaintiff's motion to stay.

Plaintiff has moved to stay the proceedings to give him additional time to conduct discovery and obtain evidence in opposition to Defendants' summary judgment motion. (ECF No. 108.)

Federal Rule of Civil Procedure 56(d) permits the Court to delay consideration of a motion for summary judgment to enable parties to obtain discovery to oppose the motion. Fed. R. Civ. P. 56(d).  In this case, the facts before the Court on Defendants' summary judgment motion compel the Court to recommend its denial. No additional facts are necessary to justify the recommendation to deny Defendant's motion. Accordingly, the Court also will recommend denying Plaintiff's motion for a stay.

## IV.   Defendants' Motion for Summary Judgment

### A.   Summary Judgment Standard

Any party may move for summary judgment, and "[t]he [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).   If the movant will have the burden of proof at trial, it also must demonstrate, with affirmative evidence, that "no reasonable trier of fact could find other than for the moving party." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id. (citing Celotex, 477 U.S. at 323). Once the moving party has met its burden, the nonmoving party must point to "specific facts showing that there is a genuine issue for trial." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence.  See Liberty Lobby, 477 U.S. at 255.  Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id.  Only admissible evidence may be considered in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." Soremekun, 509 F.3d at 984.

Here, Defendants have moved for summary judgement.  As the party who will not have the burden of proof at trial, Defendants "can prevail merely by pointing out that there is an absence of evidence to support the [Plaintiff's] case." Id. (citing Celotex, 477 U.S. at 323).   Assuming Defendants have met this burden, to defeat summary judgment, Plaintiff must point to "specific facts showing that there is a genuine issue for trial." Id.  (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).  In any

instance where there is a dispute over a material fact, the Court must resolve any controversy in favor of the non-moving party.  Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990).

## B.   Discussion

### 1.   Eighth Amendment Failure to Protect

#### a.   Legal Standard

Prison officials have a duty to protect prisoners from violence at the hands of other inmates.  Farmer v. Brennan, 511 U.S. 825, 833 (1994).  The failure of prison officials to protect inmates may rise to the level of an Eighth Amendment violation when "(1) the deprivation alleged is 'objectively, sufficiently serious' and (2) the prison officials had a 'sufficiently culpable state of mind,' acting with deliberate indifference."  Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005) (quoting Farmer, 511 U.S. at 834).

With regard to the first prong, an inmate making a failure to protect claim satisfies the "sufficiently serious deprivation" requirement by "show[ing] that he is incarcerated under conditions posing a substantial risk of serious harm."  Lemire v. California Dep't of Corr. & Rehab., 726 F.3d 1062, 1075 (9th Cir. 2013) (quoting Farmer, 511 U.S. at 834).  While it is true that the determination of the point at which a risk of harm becomes sufficiently substantial to implicate the Eighth Amendment has not been fleshed out, Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1050-51 (9th Cir. 2002) (citing Farmer, 511 U.S. at 834), "[t]he objective question of whether a prison officer's actions have exposed an inmate to a substantial risk of serious harm is a question of fact, and as such must be decided by a jury if there any room for doubt."  Lemire, 726 F.3d at 1075-76 (citations omitted).  Moreover, in order to satisfy the objective prong, "it is enough for the inmate to demonstrate that he was exposed to a substantial risk of some range of serious harms; the harm he actually suffered need not have been the most likely result among this range of outcomes."  Id. at 1076.

To satisfy the second prong, deliberate indifference, Defendants must have been

aware of facts from which the inference could be drawn that a substantial risk of harm exists, and they must also have drawn and disregarded that inference. Farmer, 511 U.S. at 837. While Defendants are correct that mere negligence on the part of Defendants is not enough to prove liability, id. at 836, a prison official does "not escape liability if the evidence show[s] he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." Id. at 843, n. 8.

**b.   Substantial Risk of Harm**

Defendants argue that there is no evidence that Plaintiff faced a substantial risk of serious harm from Siodia. Evidence to the contrary includes Plaintiff's 2008 removal of Siordia from his enemy list and withdrawal of his objection to sharing program facilities with Siordia. Further, according to Plaintiff, in 2011 Siordia himself stated he harbored no ill will toward Plaintiff. Defendants also cite Siordia's failure to attack Plaintiff when both he and Siordia were at PVSP as evidence Siordia had no intent to do so, in effect arguing that this proves Plaintiff's alleged fears of harm were unfounded.

Nevertheless, the Court finds there is sufficient evidence from which a reasonable juror could conclude that Plaintiff faced an objectively serious risk of harm from inmate Siordia. It is undisputed that Siordia was a verified and documented enemy of Plaintiff's from 2005 to 2008. While Plaintiff requested to have Siordia removed from his enemy list in 2008, Plaintiff renewed his enemy concerns at the 2011 UCC hearing. Furthermore, as an alleged leader of the Northern Riders gang, Siordia had the ability to have Plaintiff attacked by a gang associate even if he did not personally threaten or attack Plaintiff. Indeed, Plaintiff's fears that such an attack would take place at SVSP allegedly formed the basis of his transfer out of that institution. Siordia's alleged statement at the UCC hearing that he had no dispute with Plaintiff is not inconsistent with a desire to have prison officials look elsewhere for the perpetrator if Plaintiff were in fact attacked. The fact Plaintiff was never attacked is not determinative; the *risk* of an

attack is enough to trigger the "substantial risk" criterion. <u>Lemire</u>, 726 F.3d at 1076. Plaintiff states that he was informed that Siordia knew of Plaintiff's presence at PVSP and had issued a verbal warning that Plaintiff would be the victim of an imminent attack.

Assuming these facts are true, Plaintiff has offered sufficient evidence to show he faced a substantial risk of an attack.

### c.     Deliberate Indifference

There also is sufficient evidence upon which a jury could find that Defendants were deliberately indifferent to that risk when they assigned Plaintiff and Siordia to the same housing unit.

Defendants argue that even assuming Plaintiff's version of events is true, there are no facts showing Defendants actually knew Plaintiff had concerns about Siordia when they assigned him to Facility A.  The then-most recent record showed Plaintiff had asked to have Siordia removed from his enemy list in 2008 and opined that the two could program together without issue.

However, as noted, there is evidence from which it could be concluded Plaintiff told Defendants of his safety concerns regarding Siordia at the January 19, 2011 UCC hearing. If a jury were to accept this version of events, it could find Defendants were put on notice of Plaintiff's fears—arguably, sufficient facts to give rise to an inference that a substantial risk of harm existed—and yet did nothing to address them. See <u>Farmer</u>, 511 U.S. at 843, n. 8.

The record is not perfectly clear as to how much information Plaintiff actually shared with Defendants during the January 19, 2011 hearing. Plaintiff stated during his deposition only that he <u>thinks</u> he "[went] into" the "facts of the matter that the two five gang [] in Salinas Valley was involved in [Plaintiff's] safety concerns and that the Northern Riders were believed to have contracted (sic) the two fivers." (Warner Dep. 50:8-15.)  Despite this uncertainty, the said testimony is found to be sufficient, if believed, to support a finding, if made by the trier of fact, that Defendants were put on

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

notice at the January 19, 2011 hearing of a substantial risk of harm.

The case Defendants rely on, Labatad v. Corr. Corp. of Am., 714 F.3d 1155 (9th Cir. 2013), is distinguishable from the instant case. There, plaintiff sued prison officials for failing to protect plaintiff from assault by plaintiff's cellmate, a rival gang member.  Id. In affirming summary judgment in favor of the defendants, the Ninth Circuit noted the plaintiff and his cellmate had been housed together in the general population for an extended period without any problems having arisen between them; although plaintiff had fought with another member of the same gang a few days prior, he had assured prison officials the fight was not gang- related.  Id. at 1161. Given those facts, the Ninth Circuit felt prison officials were not deliberately indifferent in housing the two individuals in the same cell.

Unlike the Plaintiff in Labatad, Plaintiff here reportedly stated an unequivocal fear of Siordia on January 19, 2011.  Furthermore, unlike the prisoners in Labatad, there is no evidence here that Plaintiff spent any conflict-free time in the same facility as Siordia after the 2005 fight between Siordia and Plaintiff's former cellmate. Finally, in this case there had been an actual dispute between Plaintiff and Siordia: Plaintiff's former cellmate attacked Siordia and Siordia felt Plaintiff should have warned him.  All these facts, taken together, could lead a reasonable jury to conclude Defendants were on notice of the risk to Plaintiff and failed to address it.

### d.    Additional Defense Arguments

Although Defendants' motion is premised on their acceptance of Plaintiff's version of the facts as true, they also suggest Plaintiff's version of the facts should not be credited: they note that, having no conceivable reason to see Plaintiff harmed, they would have noted his concerns on the Form 128G if any had been raised. The absence of same on the form is evidence no such fears were raised. There is logic to that argument.  But it is inconsistent with Plaintiff's claim that he told Defendants of his enemy concerns. The resulting factual dispute precludes summary judgment.

Defendants also argue that their telling Siordia Plaintiff had enemy concerns did not amount to telling Siordia Plaintiff had "snitched." Plaintiff believes this disclosure elevated Plaintiff's risk of harm at Siordia's hands.   Either interpretation could be credited by the jury.

Defendants further argue, in the alternative, that even assuming Plaintiff did make his enemy concerns known at the January 19, 2011 hearing, Defendants responded reasonably. Farmer, 511 U.S. at 844-45 ("A prison official's duty under the Eighth Amendment is to ensure 'reasonable safety') (quoting Helling v. McKinney, 509 U.S. 25, 33 (1993)).   They reviewed Plaintiff's file and found no evidence of enemy concerns after 2008, and Siordia himself confirmed that Plaintiff's concerns were unwarranted. Finding no independent corroboration of Plaintiff's fears at the time of Plaintiff's hearing, Defendants reasonably housed Plaintiff in Facility A with Siordia.

However, according to Plaintiff, Defendants' statements and actions during the January 19, 2011 hearing—checking his file, inquiring of Siordia, and proposing the SHU as alternative housing—confirm they knew of and disregarded Plaintiff's fears. Furthermore, according to Plaintiff, Defendants told him that he needed to "be a man" since he was "out of places to go."

Defendants acknowledge that when an inmate raises enemy concerns, he is to be placed in the SHU or kept in his old housing unit until the issue is investigated and resolved, but not moved to a new housing location. A reasonable jury could conclude that Defendants acted with deliberate indifference when they moved Plaintiff to Facility A immediately after his classification hearing rather than to the SHU or Plaintiff's old unit.

Defendants maintain that all inmate claims of enemy concerns must be independently verified to ensure the inmate did not fabricate the claim to obtain a particular housing assignment.  There is no evidence to indicate Defendants attempted to independently verify Plaintiff's enemy concerns before he was moved, other than

through the conversation with inmate Siordia.

Based on this evidence, a jury could find that Defendants acted with deliberate indifference when they housed Plaintiff in the same unit as his enemy.  Defendants are therefore not entitled to judgment as a matter of law.

## 2.   Causation

### a.   Legal Standard

Under section 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009); Simmons v. Navajo Cty., Ariz, 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff may not attribute liability to a group of defendants, but must "set forth specific facts as to each individual defendant's" deprivation of his rights.  Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988)

To show causation, Plaintiff must show each individual Defendant committed "an affirmative act, participate[d] in another's affirmative acts, or omit[ted] to perform an act which he is legally required to do," thus causing the deprivation of Plaintiff's rights. Leer, 844 F.2d at 633 (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.1978) (internal quotations omitted)). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Id. (citing Rizzo v. Goode, 423 U.S. 362, 370–71, 375–77 (1976); Berg v. Kincheloe, 794 F.2d 457, 460 (9th Cir. 1986); Williams v. Bennett, 689 F.2d 1370, 1381 (11th Cir.1982) cert. denied, 464 U.S. 932 (1983)).

### b.   Analysis

Defendants argue Plaintiff has failed to attribute acts or omissions in violation of Plaintiff's rights to each Defendant.  They note that Plaintiff only describes Walker's actions during the hearing, and those actions did not rise to the level of a constitutional

violation.  Plaintiff does not know what the remaining four defendants said or did that led to the deprivation of his rights.   CDCR regulations require only three individuals participate in UCC classification hearings. Since only Walker and Fellows are listed as having performed roles at the hearing, Plaintiff cannot show that Davis, Prokop, and Spralding were even present, let alone that they participated in violating Plaintiff's rights.

The Court rejects Defendants' position. First, there are sufficient facts showing Walker personally participated in the alleged deprivations.  As Chairperson, Walker presided over the January 19, 2011 hearing that led to Plaintiff's placement on Facility A.  Plaintiff has affirmatively identified Walker as a participant. According to Plaintiff, Walker responded directly to Plaintiff's enemy concerns by telling him he was "out of places to go" and needed to "man up." Walker's having Siordia brought to the holding cell to discuss Plaintiff's enemy concerns reflect his knowledge of those concerns.

Plaintiff acknowledges not being able to specify, solely on the basis of the names of the other individual Defendants, what each said and did during the hearing.  He knows what the culpable Defendants look like, but needs to see them to identify who did what.  His incarceration presents him from seeing them before trial.

Fellows does not recall the hearing.   Undisputed evidence shows he was present—he signed off on the Form 128G as the "recorder"  Similarly, although Plaintiff cannot distinguish between Defendants Davis, Prokop, and Spralding, their names appear on the paperwork documenting the hearing.   None have any memory of participating, but none can rule out participation,

However, the undisputed evidence shows Walker did not make the decision to house Plaintiff on Facility A by himself--a quorum of three was necessary. Plaintiff posits that when, at trail, he has the opportunity to see the faces of the individual Defendants, he will be able to testify definitively as to what each said and did during the hearing.

The Court finds that if such testimony were presented against a particular Defendant or Defendants and accepted as true and persuasive by the trier of fact, a

reasonable juror could find it, along with evidence that defendant was present at the hearing, a sufficient basis to impose liability, if any, on that Defendant. As such, it cannot be said that   Defendants have shown an "absence of evidence" to prove Plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (Where the non-moving party will bear the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case.") Whether, and to what extent, these latter four Defendants participated in the deprivation of Plaintiff's rights remains an open question appropriately left to a jury.

### 3.  Qualified Immunity

#### a.  Legal Standard

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mattos v. Agarano, 661 F.3d 433, 440 (9th Cir. 2011) (citing Pearson v. Callahan, 555 U.S. 223, 231 (2009) (additional citation omitted)). "Qualified immunity shields an officer from liability even if his or her action resulted from a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. (citation and quotation marks omitted). "The purpose of qualified immunity is to strike a balance between the competing need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. (citation and quotation marks omitted).

In determining whether an official is entitled to qualified immunity, courts employ a two-pronged inquiry. The Court has discretion to address the two-step inquiry in the order it deems most suitable under the circumstances. Pearson, 555 U.S. at 236 (overruling holding in Saucier v. Katz, 533 U.S. 194 (2001), that the two-step inquiry must be conducted in that order, and the second step is reached only if the court finds a constitutional violation.) The first prong asks whether the state actor violated the

plaintiff's constitutional right; if the answer to that question is "yes," courts must then determine whether the constitutional right was "clearly established in light of the specific context of the case" at the time of the events in question. Id. (citing Robinson v. York, 566 F.3d 817, 821 (9th Cir. 2009) and Saucier v. Katz, 533 U.S. 194, 201 (2001)).

"For the second step in the qualified immunity analysis—whether the constitutional right was clearly established at the time of the conduct—the critical question is whether the contours of the right were 'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Mattos, 661 F.3d at 442 (quoting Ashcroft v. al–Kidd, 563 U.S. 731 (2011) (some internal marks omitted)). "The plaintiff bears the burden to show that the contours of the right were clearly established." Clairmont v. Sound Mental Health, 632 F.3d 1091, 1109 (9th Cir. 2011). "[W]hether the law was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition" Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1050 (9th Cir. 2002) (citation and internal marks omitted). In making this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal. Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007); Hope v. Pelzer, 536 U.S. 730, 741 (2002) (the "salient question" to the qualified immunity analysis is whether the state of the law at the time gave "fair warning" to the officials that their conduct was unconstitutional). "[W]here there is no case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" C.B. v. City of Sonora, 769 F.3d 1005, 1026 (9th Cir. 2014) (citing al–Kidd, 131 S. Ct. at 2083). An official's subjective beliefs are irrelevant. Inouye, 504 F.3d at 712.

### b.    Analysis

Defendants argue no reasonable prison official would have believed he was acting unlawfully by housing Plaintiff alongside Siordia. Saucier, 533 U.S. at 201. They

argue that even assuming Defendants' actions violated a constitutional right, that right was not clearly established.

The Court has found there are sufficient facts on the record for a reasonable jury to conclude that a constitutional violation occurred. Defendants focus their analysis on the second prong of the inquiry: whether the right alleged to have been violated was clearly established. Saucier, 533 U.S. at 201. Defendants point out that no authorities have "fleshed out" the point at which "a risk of inmate assault because sufficiently substantial for Eighth Amendment purposes." Estate of Ford, 301 F.3d at 1049.

In Estate of Ford, the Ninth Circuit granted summary judgment to defendants on qualified immunity grounds in a case in which the decedent was killed by his cellmate. 301 F.3d at 1049.  The decedents family alleged prison officials had violated the Eighth Amendment by housing decedent with an inmate known to be violent.  The Court found that the conduct alleged, if proven, would constitute a violation of the Eighth Amendment.  However, it held that a reasonable officer would not have known that his conduct in housing the decedent with his attacker was unlawful.  While prison officials were aware of the attacker's violent past, evidence showed the decedent had requested to be housed with his attacker, had been housed with him previously without incident, and had no history of enemy, gang, or "victim-predator" concerns.  The Court held that a prison official is entitled to qualified immunity on a failure to protect claim when, "understanding that he cannot recklessly disregard a substantial risk of serious harm, [he] could know all of the facts yet mistakenly, but reasonably, perceive that the exposure in any given situation was not that high." Id. at 1050 (citing Saucier, 533 U.S. at 205).  The Court emphasized that while Farmer had clearly established a right to be free from a risk of inmate assault, no court had yet fleshed out at what point the risk became "sufficiently substantial for Eighth Amendment purposes," and thus the defendants were not on notice as to when the risk of double-celling the decedent with his attacker elevated from "*a* risk of *some* harm to a *substantial* risk of *serious* harm." Id.

It is important to note that the inquiry in <u>Estate of Ford</u> relied heavily on the facts the defendants there were presented with.  Here, viewing the facts in the light most favorable to Plaintiff, a reasonable prison official would have been aware that Plaintiff faced an objectively serious risk of substantial harm at the hands of Siordia and his gang.  Defendants offer no justification, aside from Siordia's potentially self-serving statements, for concluding that the renewed threat of harm at Siordia behest was any less than the threat in 2005 when Siordia was placed on Plaintiff's enemy list. Defendants acknowledge that pending verification of enemy concerns, an inmate is to be placed in the SHU or kept in his old housing unit, but not moved to a new housing location. This reflects prison awareness of the substantial risk which may arise when inmates raise enemy concerns.

Defendants also attempt to analogize the case at bar to <u>Toscano v. Lewis</u>, Case No. C-12-5893 EMC, 2015 WL 4940832 (N.D. Cal. Aug. 19, 2015). There, the Court found the defendants were entitled to qualified immunity after housing the plaintiff alongside a gang-affiliated inmate who eventually attacked the plaintiff. The plaintiff had expressed fears of retaliation from his former gang associates in the general population after he was validated as "inactive." Prison officials responded by moving the plaintiff into administrative segregation for several months while they investigated the plaintiff's claims.  <u>Id.</u> at *16. After the investigation was completed, Plaintiff was returned to the general population and housed with his attacker. <u>Id.</u>  The defendants in <u>Toscano</u> were presented with mixed information regarding the risk faced by the plaintiff, including old paperwork documenting the plaintiff's enemy concerns. The Court relied on <u>Estate of Ford</u> to conclude that, based on the information available to the defendants at the time, a reasonable official would not have believed housing the plaintiff alongside his attacker would expose the plaintiff to a substantial risk of harm. <u>Id.</u> at *22.

Defendants argue that here, as in <u>Toscano,</u> prison officials were presented with conflicting information regarding risk to Plaintiff. However, in <u>Toscano</u>, the discrepancies

the officials faced were substantially more pronounced than here: the plaintiff in Toscano had allegedly stated, in the middle of the investigation, that his "safety concerns [were] all made up and not true," before once again reiterating his safety concerns, and there was evidence that the plaintiff had fabricated his concerns in order to secure a particular housing situation. Id. at *9. Furthermore, plaintiff had proven to be uncooperative during the investigation of his concerns, further casting doubt on their veracity. Id. at *8. In granting summary judgment, the Court relied on the prison officials' reasoned and thorough decision-making to conclude they acted reasonably. Toscano, 2015 WL 4940832 at *22.

Again, the Court's inquiry in Toscano was very fact specific. Here, there is no evidence that Plaintiff's enemy concerns were fabricated or unjustified. As to the "mixed" information faced by Defendants, Plaintiff's removal of Siordia from his enemy list in 2008 does not negate the potential for renewed enemy concerns in 2011. Indeed, one could conclude that Defendants acted unreasonably by disregarding Plaintiff's present-day concerns, especially where triggered by new threats to Plaintiff, and giving deference to a three year old decision.

The fact-specific nature of this inquiry was recently reiterated by the Ninth Circuit in Castro v. Cty. of Los Angeles, No. 12-56829 (9th Cir. Aug. 15, 2016) (en banc) (slip op.). There, the court found that jail officials were not entitled to qualified immunity after failing to protect Plaintiff from an attack by his intoxicated cellmate in the county jail. In rejecting the Defendants' argument that the right at issue was not "clearly established," the Court noted that the contours of the right at issue were simply "the right to be free from violence at the hands of other inmates," and "required only that the individual defendants take reasonable measures to mitigate the substantial risk [of harm]." Id. Without evaluating what would constitute "reasonable measures," the Court found the facts on the record in that case sufficient to support a finding that Defendants knew of a substantial risk but failed to reasonably mitigate it in housing the Plaintiff with his

attacker.  <u>Id.</u>

Here, based on the facts on the record, the Court finds a reasonable prison official would have known not to house Plaintiff with Siordia immediately after learning of Plaintiff's concerns where there was a documented past history between the inmates, where Plaintiff steadfastly refused to be housed with Siordia, and where there were procedures and mechanisms available to safely segregate Plaintiff while his concerns were being investigated. Based on the foregoing, Defendants are therefore not entitled to qualified immunity.

## V.   Conclusion

Based on the facts, a reasonable jury could conclude Defendants were deliberately indifferent to a substantial risk of harm to Plaintiff. The Court finds Defendants are not entitled to judgment as a matter of law. Based on these findings, there is no need, at this juncture, to stay the proceedings in order to reopen discovery. Accordingly, IT IS HEREBY RECOMMENDED that:

1.      Defendants' motion for summary judgment (ECF No. 99) be DENIED, and

2.      Plaintiff's motion to stay the proceedings pursuant to Federal Rule of Civil Procedure 56(d) (ECF No. 108) be DENIED.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen** (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within **fourteen** (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of

rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   August 16, 2016          /s/ *Michael J. Seng*

UNITED STATES MAGISTRATE JUDGE