UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARL WARNER, | **Case No.  1:12-cv-01146-LJO-MJS (PC)** |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR AN EXTENSION OF TIME TO FILE REPLY** |
| v. | |
| M. CATE, et al., | **(ECF No. 137)** |
| Defendants. | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL DEFENDANTS TO ANSWER  INTERROGATORIES AND PRODUCE DOCUMENTS** |
| | **(ECF NOS. 126 & 129)** |
| | **FOURTEEN DAY DEADLINE** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. (ECF No. 1 & 7.) This action proceeds on Plaintiff's first amended complaint ("FAC") against Defendants Walker, Davis, Prokop, Spralding, and Fellows for failure to protect in violation of the Eighth Amendment. (ECF No. 10.)

Before the Court is Plaintiff's September 30, 2016 motion to compel discovery. (ECF No. 126.)  On October 11, 2016, Plaintiff filed a supplement to his motion to compel (ECF No. 129) which includes Defendants' discovery responses. Defendants oppose the motion. (ECF No. 134.)

On November 30, 2016, Plaintiff filed a late motion seeking an extension of time to file a reply. (ECF No. 137.) That motion is also pending before the Court. On December 5, 2016, Plaintiff filed his reply. (ECF No. 138.) The matter is submitted pursuant to Local Rule 230(/).

I.   **Procedural History**

The Court set an initial discovery deadline of July 4, 2015. (ECF No. 48.) On motion by Plaintiff, that deadline was extended to July 24, 2015. (ECF Nos. 61 & 64.) Between June 9 and July 24, 2015 Plaintiff served on Defendants a request for the production of documents as well as one set of interrogatories each to Defendants Fellows, Davis, Spralding, and Prokop; two sets of interrogatories to Defendant Walker, and one set of requests for admissions to Defendant Walker. (Decl. of E. Warner in Supp. of Mot. to Compel (ECF No. 129 at 33) ¶¶ 2-4.)

After Defendants objected to all of Plaintiff's discovery requests as untimely on the ground that Defendants' responses would come due November 23, 2015, after the close of discovery, Plaintiff filed a motion to compel Defendants' responses. (ECF No. 90.) On July 7, 2016, Plaintiff's motion to compel was granted. (ECF No. 112.) Defendants were directed to serve responses to Plaintiff's discovery requests within twenty-one days of the Court's order. Id. Plaintiff was directed to file any additional motions to compel within fourteen days of receiving Defendants' responses. Id.

Defendants requested and were granted one extension of time to serve Plaintiff with their responses. (ECF Nos. 114 & 115.) On or about August 29, 2016, Defendants served Plaintiff with their responses. (ECF No. 119 ¶ 2.) After seeking and receiving an extension of time of his own (ECF Nos. 119 & 124), Plaintiff filed the instant motion to compel on September 30, 2016.  (ECF No. 126.) On October 11, 2016, Plaintiff filed a supplement to the motion to compel; the supplement is merely a copy of the motion to compel with the addition of Defendants' discovery responses, which Plaintiff omitted from his original filing. As the supplement contains Plaintiff's full motion to compel, the

2

Court will refer to that document, docketed as ECF No. 129, exclusively throughout this order.

## II.    Plaintiff's Case Allegations

The following factual allegations are summarized from Plaintiff's FAC:

On January 6, 2011, Plaintiff was transferred from Salinas Valley State Prison (SVSP) to PVSP because of security and safety concerns stemming from his negative relationship with the Northern Riders prison gang. Plaintiff was initially housed on orientation status and exposed to inmates throughout PVSP. He was recognized by various inmates as having been confined in segregation at SVSP because of his safety concerns. The leader of the Northern Riders at PVSP, an inmate named Siordia[1], learned of Plaintiff's presence and threatened "to do Plaintiff great bodily harm." In addition to his gang allegiance, Siordia wanted to harm Plaintiff because Siordia had been attacked several years earlier at another prison by an associate of Plaintiff's. Plaintiff feared Siordia was capable of directing an attack against Plaintiff at PVSP.

On January 19, 2011, Plaintiff appeared before Defendants for an initial classification hearing. Plaintiff told Defendants he believed his safety was in jeopardy for the reasons stated above. Defendants responded that Plaintiff needed "to be a man" and deal with the inmates who posed a threat to him. Defendants also told Plaintiff that he was "'out of places to go.'" Defendant Walker then summoned inmate Siordia and placed him in a holding cage adjacent to Plaintiff. Walker told Siordia what Plaintiff had said about his fears and then told the two inmates to talk it out. Siordia denied any animosity towards Plaintiff. Defendants then approved Plaintiff for the same housing unit as Siordia. In the housing unit, Plaintiff was confronted by another inmate and questioned about snitching. Plaintiff refused to leave his cell for meals. Prisoners affiliated with Siordia loitered outside Plaintiff's cell during meal breaks. Shortly

---

[1] The papers filed in this case spell inmate Siordia's name as "Siordia" and "Sordia." As the Court has utilized the spelling "Siordia" in the past (see, e.g., Order Den. Def.'s Mot. Summ. J. (ECF No. 116)) it will continue to do so for the sake of consistency.

thereafter Plaintiff cut his own wrists and was removed from general population and eventually from PVSP.

### III.   Legal Standard

Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense, and for good cause, the Court may order discovery of any matter relevant to the subject matter involved in the action.  Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Id.

However, the court must limit discovery if the burden of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C). In such situations, the Court must limit discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

(Id.) "In each instance, the determination whether . . . information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action."  Fed. R. Civ. P. 26 Advisory Committee's Note (2000 Amendment) (Gap Report) (Subdivision (b)(1)).

Pursuant to Rule 37(a), a party propounding discovery may seek an order compelling disclosure when an opposing party objects or otherwise fails to respond or provides evasive or incomplete responses. Fed. R. Civ. P. 37(a)(3)(B). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).

Generally, the party moving to compel bears the burden of demonstrating why

the objections are not justified.  E.g., Grabek v. Dickinson, No. CIV S-10-2892 GGH P.,

2012 WL 113799, at *1 (E.D. Cal. Jan. 13, 2012); Ellis v. Cambra, No. 1:02-cv-05646-

AWI-SMS (PC), 2008 WL 860523, at *4 (E.D. Cal. Mar. 27, 2008).  This requires the

moving party to inform the Court which discovery requests are the subject of the motion

to compel, and, for each disputed response, why the information sought is relevant and

why the responding party's objections are not meritorious.  Grabek, 2012 WL 113799, at

*1; Womack v. Virga, No. CIV S-11-1030 MCE EFB P., 2011 WL 6703958, at *3 (E.D.

Cal. Dec. 21, 2011).

        The Court is vested with broad discretion to manage discovery and

notwithstanding these procedures, Plaintiff is entitled to leniency as a pro se litigant;

therefore, to the extent possible, the Court endeavors to resolve Plaintiff's motion to

compel on its merits.  Hunt v. Cnty. Of Orange, 672 F.3d 606, 616 (9th Cir. 2012);

Surfvivor Media, Inc. v. Survivor Productions, 406 F.3d 625, 635 (9th Cir. 2005); Hallett

v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002).

## IV.     Discussion

        Plaintiff seeks an order compelling Defendants to respond to seven requests for

the production of documents ("RPDs") as well as ten Interrogatories directed to

Defendant Walker. Rather than address the requests in the order they were proffered,

the Court will group them into the following subcategories: 1) Privileged Documents; 2)

Plaintiff's Prison Record; 3) the Incident; 4) Prison Administration; and 5) Inmate

Siordia.

### A.     Privileged Documents

        The Supreme Court has long noted that privileges are disfavored. Jaffee v.

Redmond, 518 U.S. 1, 9 (1996). "The party asserting an evidentiary privilege has the

burden to demonstrate that the privilege applies to the information in question." Tornay

v. United States, 840 F.2d 1424, 1426 (9th Cir. 1988). Privileges are to be "strictly

construed" because they "impede full and free discovery of the truth." Eureka Fin. Corp.

v. Hartford Acc. and Indem. Co., 136 F.R.D. 179, 183 (E.D. Cal. 1991). "If the privilege is worth protecting, a litigant must be prepared to expend some time to justify the assertion of the privilege." Id.

In civil rights cases brought under section 1983, questions of privilege are resolved by federal law. Kerr v. United States Dist. Ct. for the N. Dist. of Cal., 511 F.2d 192, 197 (9th Cir. 1975). "State privilege doctrine, whether derived from statutes or court decisions, is not binding on federal courts in these kinds of cases." Kelly v. City of San Jose, 114 F.R.D. 653, 655–56 (N.D. Cal. 1987).

"Federal common law recognizes a qualified privilege for official information." Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1990) (citing Kerr, 511 F.2d at 198. The discoverability of official documents should be determined under the "balancing approach that is moderately pre-weighted in favor of disclosure." Kelly, 114 F.R.D. at 661. The party asserting the privilege must properly invoke the privilege by making a "substantial threshold showing." Id. at 669. For each discovery request objected to, the party must file an objection and submit a declaration or affidavit from a responsible official with personal knowledge of the matters attested to by the official. Id. The affidavit or declaration must include (1) an affirmation that the agency has generated or collected the requested material and that it has maintained its confidentiality, (2) a statement that the material has been personally reviewed by the official, (3) a description of the governmental or privacy interests that would be threatened by disclosure of the material to the plaintiff or plaintiff's attorney, (4) a description of how disclosure under a protective order would create a substantial risk of harm to those interests, and (5) a projection of the harm to the threatened interest or interests if disclosure were made. Id. at 670. "The asserting party, as in any case where a privilege is claimed, must sufficiently identify the documents so as to afford the requesting party an opportunity to challenge the assertion of privilege." Miller v. Pancucci, 141 F.R.D. 292, 300 (9th Cir. 1992). Pursuant to Federal Rule of Civil

6

Procedure 26(b)(5)(A),

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
>> (i)   expressly make the claim; and
>>
>> (ii)  describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

The advisory committee notes to Rule 26(b)(5) make clear that withholding otherwise discoverable materials on the basis that they are privileged or subject to the work product doctrine without notifying the other parties as provided in Rule 26(b)(5)(A) by describing the nature of the information in a privilege log so as to enable them to assess the claim "*may* be viewed as a waiver of the privilege or protection." Fed. R. Civ. Pro. 26(b)(5) advisory committee's comment (emphasis added).

Nonetheless, the Ninth Circuit has "reject[ed] a per se waiver rule that deems a privilege waived if a privilege log is not produced within Rule 34's 30-day time limit." Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Ct. for the Dist. of Mont., 408 F.3d 1142, 1149 (9th Cir. 2005). Instead, the Ninth Circuit has instructed courts to look at the following factors in determining whether a waiver has occurred: (1) "the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged;" (2) "the timeliness of the objection and accompanying information about the withheld documents;" (3) "the magnitude of the document production;" and (4) "other particular circumstances of the litigation that make responding to discovery unusually easy ... or unusually hard." Id. In evaluating these factors, the court is directed to apply them "in the context of a holistic reasonableness analysis" and not in a "mechanistic

determination of whether the information is provided in a particular format." Id. (emphasis added).

Here, Plaintiff seeks to compel responses to RPDs Nos. 1, 7, and 8, and Interrogatories Nos. 12, 13, 14, 15, and 17, all of which seek, in whole or in part, details about staff misconduct, inmate enemy lists and gang associations, and inmate personal information. (Pl.'s Mot. to Compel ("MTC") (ECF No. 129) at 5-30.) Defendants objected to the disclosure of any information regarding staff complaints, disciplinary proceedings, inmate enemies and gang associations, and any personal information about inmates other than Plaintiff. They submitted to Plaintiff the declaration of PVSP Litigation Coordinator K.D. Geringer in support of their assertion of privilege. (Decl. of K.D. Geringer in Supp. of Official Information Privilege (MTC at 82-85)).

Without referencing any particular discovery request, the declaration proffers a blanket objection to disclosing any documents relating to staff complaints, disciplinary proceedings, or inmate enemy lists, gang affiliations, or personal information. (Id. ¶¶ 3, 10.) Geringer avers that those documents are kept confidential to encourage the accurate and complete investigations of claims of misconduct, protect staff personal information, and protect inmate safety and institutional security. (Id. ¶¶ 3-14.) Geringer cites to California laws and regulations protecting such information as privileged. (Id. ¶¶ 4-5.) Geringer states that a protective order would be insufficient to mitigate the potential harm of disclosure. (Id. ¶ 15.) Geringer's declaration does not describe the nature of the specific documents withheld, nor did Defendants submit a privilege log.

Most of Plaintiff's requests for confidential information can be disposed of on relevance or untimeliness grounds, as discussed in succeeding subsections. Two requests, however, warrant an examination of whether Defendants properly invoked privilege.

### 1.    Defendants' Disciplinary Records

Plaintiff's RPD No. 8 seeks:

 "Copies of any/and all documents pertaining to any court actions, disciplinary proceeding's (sic), reports of staff misconduct; reports generated as witnesses, or [participation] in any official investigations of criminal acts, or misconduct involving themselves or other C.D.C.R. employees, of each of the defendants in this suit."

(MTC at 61.)

Defendants object that Plaintiff's request for any documents pertaining to other CDCR employees not connected with this suit is overbroad and likely to produce irrelevant information. As to evidence of Defendants' own misconduct, Defendants object that such documents are privileged and confidential for reasons of institutional and personal security, and cite to both the Geringer Declaration and state laws, including sections of the California Government Code, Penal Code, and Evidence Code, in support of this assertion.

The Court agrees that evidence of unrelated employees' misconduct, as well as Defendants' witness statements relating to the investigation of the same, are irrelevant and beyond the scope of this case. Plaintiff's request for disclosure of those documents will be denied.

Likewise, Plaintiff's requests for all "reports" of staff misconduct, valid or otherwise, is grossly overbroad.  Even if not overbroad, and even if responsive records suggested some misconduct on the part of a defendant unrelated to this case, it would be precluded under Federal Rule of Evidence 403.  To consider it the Court and the parties would have to conduct a trial within a trial to determine whether the suggestion or finding of other misconduct was justified and relevant. That would be unduly time consuming, potentially confusing and prejudicial.  Plaintiff's request for reports of misconduct against Defendants will therefore be denied.

However, to the extent any Defendant has been investigated or been subject to disciplinary proceedings for the misconduct alleged in this lawsuit (failure to protect

Plaintiff from harm at the hands of other inmates), evidence of same would be relevant to this case. Further, Defendants' objections to these disclosures on state law privilege grounds fail. <u>Kelly</u>, 114 F.R.D. at 655–56. Defendants also have failed to specify, in accordance with Rule 26(b)(5)(A), the nature of the documents withheld on privilege grounds, thereby denying Plaintiff a meaningful opportunity to attempt to rebut their assertion of privilege. Thus, it could be said that Defendants may be deemed to have waived the assertion of privilege.

However, the Court is cognizant of the genuine security concerns Defendants raise. Therefore, Defendants will be directed to file with the Court and serve on Plaintiff, within fourteen (14) days of this order the following:

1. A detailed privilege log identifying the date, title and nature of any document reflecting disciplinary proceedings being initiated against any Defendant herein relating to the actions and inaction alleged in the Plaintiff's pleadings;

2. For each document, an individual with personal knowledge of the content of each document must submit an affidavit describing with specificity his or her reason for refusing to disclose the document. Boilerplate objections will not be considered; and

3. Deliver every such document to the Court for *in camera* review;

4. Defendants also may file and serve a proposed protective order for the Court's review and approval in the event the Court determines that disclosure of these materials to Plaintiff is appropriate;

To the extent Defendants' objections stem from concerns regarding the dissemination of confidential personal information, they must include in their submissions to the Court redacted versions believed necessary to protect such information.

### 2.   "Confidential" Information Within Plaintiff's File

Plaintiff's RPD No. 1 requested Plaintiff's "complete prison record." As discussed

further in subsection IV.B.1.a, below, his motion to compel compliance with this request will be denied on a several grounds, including that the record generally is equally available to Plaintiff. However, Plaintiff's motion specifically requests as a subset of his record the "confidential" information that Defendants purportedly reviewed during the January 19, 2011 classification hearing regarding Plaintiff's placement. (MTC at 10.) Plaintiff contends that those records are relevant to Plaintiff's claim that Defendants acted with deliberate indifference when they housed Plaintiff with Siordia.

Defendants respond that Plaintiff is attempting to refine his request so as to include production of documents not requested before the end of discovery. Defendants also claim privilege.

As the Court looked beyond Defendant's technical waiver of privilege claims, so too will it look beyond the technical deficiency created by the delayed specificity in Plaintiff's request. Given the potentially very relevant nature of such documents if they show what Plaintiff suspects, the interests of justice and the desire to see this case proceed to trial on consideration of all relevant evidence, the Court therefore directs Defendants to produce, within fourteen (14) days of the date of this Order, any withheld portion of Plaintiff's prison records file, both in current and in redacted, form,  for *in camera* review and provide a privilege log, all in accordance with the procedures set out in Section IV.A.1 above.

**B.    Plaintiff's Prison Records**

**1.    RPD No. 1**

Plaintiff seeks to compel a response to RPD No. 1, which requests Plaintiff's "complete prison record," or central file. (MTC at 56.) In his motion to compel, Plaintiff clarifies that he seeks the production of his "archive file" and "minutes made by the recorder of the hearing on January 19, 2011." (<u>Id.</u> at 8-11.)

### a.    "Complete" Prison Record and Archive File

Plaintiff seeks his "complete prison record," including his archive file (Plaintiff's prison record under a different CDCR number). He argues there is a "substantially reasonable likelihood" that his prison records will contain admissible evidence pertinent to this action.  Plaintiff argues that, based on his past experience with the CDCR, he believes Defendants are best-positioned to obtain this file on Plaintiff's behalf, because they have more ready access to the electronic and paper recordkeeping systems. (MTC at 11.) Plaintiff states that if Defendants are unwilling to turn over the documents to Plaintiff, Plaintiff would agree to simply inspecting them so that he may identify the documents that pertain to his case.

Defendants object to producing Plaintiff's entire central file on several grounds. First, they argue that Plaintiff's request is vague, unspecific, and overbroad, and fails to describe with reasonable particularity the items he seeks, as required by Rule 34(b)(1)(A). Second, Defendants argue that some of the documents within Plaintiff's central file may pose confidentiality and safety concerns. Finally, Defendants point out that Plaintiff himself has access to his central file, and may request permission directly from prison authorities to inspect it—thus, there is no need for Defendants to produce said file to Plaintiff.

Defendants also object to Plaintiff's request for his archive file as untimely, as Plaintiff did not specifically request it in a RPD prior to filing his motion to compel.

The Court finds Plaintiff's request is overbroad and unduly burdensome on Defendants. See Mailhoit v. Home Depot U.S.A., Inc., 285 F.R.D. 566, 570 (C.D. Cal. 2012) ("All-encompassing demands that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Rule 34(b)(1)(A)") (internal quotations omitted). Plaintiff may not use discovery requests to engage in a fishing expedition in the hopes that he may turn up some relevant or useful information. Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004).

Furthermore, Plaintiff has been advised that the Court will not compel disclosure of documents that are equally available to Plaintiff, such as those contained within Plaintiff's central file. (<u>See</u> Discovery and Scheduling Order (ECF No. 48) at 2.) Plaintiff's argument that Defendants can more readily access Plaintiff's central file is unavailing. Plaintiff has presented no evidence that he ever attempted to inspect his central file without Court intervention.  Indeed, this case has been pending since 2012; Plaintiff has had more than sufficient time to make the necessary requests for his file to the appropriate prison authorities.

As to Plaintiff's archive file, Defendants are correct that Plaintiff's request for his archive file is untimely, and Plaintiff's request will be denied on that ground. Moreover, Plaintiff has not demonstrated how the information contained within his archive file is relevant to any of the claims in this lawsuit.

Plaintiff's request for Defendants to either produce or copy Plaintiff's entire prison file, including his archive file, will be denied. The Court does nevertheless request Defendants' assistance in facilitating Plaintiff's access to his file to the extent Defendants are reasonably able to do so.

### c.  Hearing Minutes

Plaintiff asks for "minutes made by the recorder of the hearing on January 19, 2011." (MTC at 11.) Defendants respond that they provided Plaintiff with the CDCR 128G Classification Chrono documenting the January 19, 2011 hearing, and reported they were unaware of any other report documenting the meeting.

Notwithstanding that this specific request was not contained in Plaintiff's request for production of documents and is thus untimely, Defendants have responded to it. Accordingly, Plaintiff's request is denied.

### 2.  Plaintiff's Enemy List

Interrogatory No. 15 asks for the names and addresses of any inmates currently listed as Plaintiff's enemy within Plaintiff's central file or any other prison records. (MTC

at 97.)

To the extent Plaintiff seeks enemy information contained in other inmates' files or confidential enemy information contained within Plaintiff's own file, Defendants objected on the grounds of privilege and institutional security. To the extent Plaintiff seeks non-confidential information contained within his own file, Defendants reiterated that Plaintiff is free to seek this information on his own. Defendants also objected that this interrogatory seeks information beyond the scope of this litigation.

The Court agrees: Plaintiff's request extends beyond the scope of this litigation. According to Plaintiff, this case stems from his enemy concerns with one inmate, Siordia. Any other enemies that are not related to this case not relevant. Plaintiff proffered a separate request for Siordia's contact information (see Interrogatory No. 12). Plaintiff's request as to Interrogatory No. 15 will be denied in its entirety.

**C.    The Incident**

**1.    Written Reports**

Plaintiff's RDP No. 2 seeks "all written statements . . . identifiable as reports about the incidents on January 19th and 20th, 2011, made by CDCR employees and/ or witnesses." In his motion to compel, Plaintiff explains that this request was intended to include documents regarding his holding cell interview with Siordia. (MTC at 57.) Plaintiff believes there are detailed written reports of the self-cutting incident, including incident reports and witness statements. Likewise, he believes there are detailed logs documenting his stay in the holding cell, listing such details as the circumstances surrounding his placement in the cell, the names of the officers who placed him there, and the names of the supervisors who approved the placement.

Defendants assert they provided Plaintiff with a copy of the CDCR 128G form documenting the January 19, 2011 hearing and know of no other written reports of the incident. Defendants are unaware of any reports documenting Plaintiff's self-laceration incident other than medical records which Plaintiff can access himself. Further,

14

Defendants deny that any holding cell interview with Siordia ever took place.

Defendants have responded to Plaintiff's requests. Defendants cannot be forced to produce something they do not have and insist does not exist. Simply because Plaintiff does not like the response he received does not change the result. Scott v. Palmer, 1:09-cv-01329, 2014 WL 6685810, at *3 (E.D. Cal. Nov. 26, 2014) ("Mere distrust and suspicion regarding discovery responses do *not* form a legitimate basis to further challenge responses which are facially legally sufficient; and Plaintiff is entitled neither to continue demanding additional and/or different evidence in support of discovery responses already provided") (emphasis in original).   If Plaintiff thinks a response he received is false, he may attempt to so show at trial.

### 2.   Photographs

Plaintiff's RPD No. 5 seeks photographs of the holding cage area of Facility A at PVSP. (MTC at 59.) Defendants object on the ground that they have no such photographs in their possession.

Defendants have responded to this request in full. Defendants have no obligation under the discovery rules to create evidence to support Plaintiff's claims. Accordingly, the request to compel Defendants to take photographs will be denied.

### 3.   Mental Health Staff List

Plaintiff's RPD No. 6 seeks the name and address of the PVSP Facility A psychologist "scheduled to conduct an initial intake interview with Plaintiff on January 19, 2011," as well as a list of mental health services staff members working on January 19 and 20, 2011. (MTC at 59.) Defendants responded that they attempted to discover the name of the psychologist referenced in the request and were unsuccessful. They were also unable to locate the staff list.

As above, Defendants cannot be compelled to produce documents which they do not have and do not believe exist. Plaintiff's request will be denied.

### 4.     The Holding Cage Conversation

Plaintiff seeks responses to several interrogatories proffered to Defendant Walker relating to the alleged holding cage conversation between him and Siordia. Interrogatory No. 7 asks: "[E]xplain the Committee's decision to excuse the Plaintiff from the room in order to summon inmate Sordia to the program office area, inform him of Plaintiff's report of having received a warning from him of eminent danger if he remained at P.V.S.P.; and arrange for a confrontation between he and the Plaintiff via the holding cages within the office area?" (MTC at 93.) Interrogatory No. 8 asks: "According to your direct knowledge and information, did any of the other member(s) of the committee raise any . . . objections or express any dissenting opinions, concerning the propriety of your decision to arrange such a controlled confrontation between the Plaintiff and inmate Sordia?" (MTC at 93-94.) Finally, Interrogatory No. 9 asks: "Were you not aware that Plaintiff had previously caused inmate Sordia[] to be listed as an enemy . . . before taking the course of action you did involving he and inmate Sordia, on January 19, 2011?" (MTC at 94.)

Defendant Walker objected to the above interrogatories on the ground that the holding cage conversation with Siordia never happened, and therefore, no response exists. Subject to his objection, Defendant Walker states in response to Interrogatory No. 9  that he does not remember if he was aware that Siordia was listed as Plaintiff's enemy at the time of the January 19, 2011 hearing.

Plaintiff has his answers. Plaintiff's motion to compel responses to Interrogatories Nos. 7, 8, and 9 will therefore be denied.

### 5.     Plaintiff's January 19, 2011 Cellmate

Interrogatory No. 17 seeks the name, identification number, and current address of the inmate housed with Plaintiff in the orientation unit on January 19, 2011 prior to Plaintiffs move to Siordia's housing unit. (MTC at 98.) Plaintiff's motion to compel explains that this individual can testify about Plaintiff's unwillingness to be moved and

16

the fact that Plaintiff had to be forcibly removed from his former cell in a manner which Plaintiff describes as "unprecedented."  Plaintiff believes this inmate may know the identities of the correctional officers who processed and orchestrated the move. Defendants object to disclosing this information on relevancy and privilege grounds.

There is a chance this inmate could provide relevant information. Moreover, Defendants' objections on privilege grounds are unavailing, as they do not explain how releasing this inmate's name (which Plaintiff theoretically knew at the time) and current institution would pose a serious threat to institutional security. Defendants are therefore directed to disclose to Plaintiff the name, CDCR number, and current institution of the inmate assigned as Plaintiff's cellmate immediately prior to his cell move on January 19, 2011.

**D.    Prison Administration**

**1.    Statistics of Inmate Violence**

Plaintiff's RPD No. 7 requests a "comprehensive statistical report" of incidents of inmate violence in PVSP Facility A from 2009 to 2014. (MTC at 60.) Plaintiff asks for instances of one-on-one violence, violence involving two or more inmates, and violence between groups of inmates, as well as inmate-staff violence. He seeks the dates of each incident; the names, CDCR numbers, badge numbers, and addresses of each party involved; and copies of reports and photographs taken by the Investigative Services Unit in relation to each occurrence.

Defendants objected that Plaintiff's request is unintelligible, seeks privileged information, and in any case, seeks a document that Defendants believe does not exist.

Plaintiff's request is grossly overbroad, seeks information with only tangential, if any, potential relation to his case, and presents obvious security risks. Plaintiff's request will be denied.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2. Prisoner Housing Protocols

RPD No. 9 seeks copies of CDCR rules, directives, and protocols regarding inmate housing assignments in effect between January 19 and 20, 2011. (MTC at 62.) In response, Defendants served Plaintiff with copies of the 2011 Title 15 Article 1.6 Section 3269 Inmate Housing Assignments, DOM 52020.5.3 Daily Record of Housing and Assignment Changes, and DOM 54055.7 Housing and Discipline. Plaintiff now argues in his motion to compel that there are other documents Defendants were required to fill out regarding Plaintiff's housing assignment that Defendants should have but failed to turn over, including a CDCR Form 154.

Plaintiff's request sought rules, directives, and protocols only. He did not request the CDCR Form 154 or any other documents particular to Plaintiff's own housing assignment, and he does not argue that the documents he received were unresponsive to his actual request. Plaintiff's request will be denied.

### E. Inmate Siordia

#### 1. Identifying Inmate Siordia, His Associates, and Victims

Interrogatories Nos. 12, 13, and 14 all request identifying information for inmate Siordia, his associates, and his victims. Specifically, Interrogatory No. 12 requests Siordia's full name, identification numbers, and current address. (MTC at 95.) Interrogatory No. 13 seeks the names, identification numbers, and addresses of inmate Siordia's past victims and gang associates. (MTC at 96.) Interrogatory No. 14 asks for the names, identification numbers, and addresses of the two inmates responsible for attacking inmate Siordia years ago. (MTC at 96.)

Defendants provided Plaintiff with inmate Siordia's full name, Robert Siordia. Defendants objected to each remaining request on the grounds that such information is confidential and beyond the scope of this case.

The Court agrees that most of this information goes beyond the scope of this case. Evidence of Siordia's prior gang associates, victims, or enemies is minimally

relevant to whether Siordia posed a substantial risk of harm to Plaintiff on January 19, 2011. While Plaintiff claims the attack on Siordia was a driving force behind Siordia's animosity toward Plaintiff in 2011, Plaintiff does not explain what information these inmates could provide that would be relevant to Plaintiff's claims today. Plaintiff's motion to compel as to Interrogatory Nos. 13 and 14 is denied.

However, Plaintiff may wish to subpoena Siordia, a relevant witness, to testify at trial. To do so, Plaintiff will need Siordia's CDCR number and current institution. This information is free and publicly available to anyone with an internet connection[2]; thus, Defendants' claim of privilege is unavailing. Defendants are therefore directed to disclose to Plaintiff Siordia's CDCR number and current institution, as requested in Interrogatory No. 12.

### 2.    Siordia's Violent History

Interrogatory No. 10 asks Defendant Walker if he had "the means of assessing the department's files and records pertaining to inmate Sordia's prior history of violent behavior . . . before making the decision [to] act with such clear indifference to Plaintiff's fears and concerns?" Interrogatory No. 11 asks Defendant Walker if he or anyone else "reviewed the criminal of C.D.C.R. disciplinary record history, and/or documented reports, memo[s], confidential, or otherwise, pertaining to the proclivities of inmate Sordia towards inflicting serious physical injury upon other inmate(s)." (MTC at 94-95.)

In response to Interrogatory No. 10, Defendant Walker replied that he possessed the means to review an inmate's record of violent behavior and gang affiliation. In response to Interrogatory No. 11, Defendant replied that he reviewed no such records with regards to Siordia, and is not aware of any other individual having done so.

Plaintiff's dispute with Defendant Walker's responses centers on his disbelief of them. Plaintiff's motion to compel responses to Interrogatories Nos. 10 and 11 will be denied.

---

[2] The CDCR maintains a free public inmate locater website, http://inmatelocator.cdcr.ca.gov/default.aspx.

**V.      Motion for an Extension to File Reply**

Plaintiff requested an extension of time to file a reply on the ground that shortly after he filed the instant motion to compel he was transferred to a crisis bed, during which time he was separated from his legal property. He also states he had limited access to the law library.

Good cause appearing, the Court will grant Plaintiff's motion for an extension.

**VI.     Conclusion**

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for an extension to file a reply (ECF No. 137) is GRANTED;

2.  Plaintiff's motion to compel (ECF Nos. 126 & 129) is GRANTED in part and DENIED in part, consistent with this order;

3.  Within fourteen (14) days of this order, Defendants are DIRECTED to:

    a. Provide Plaintiff with the CDCR number and current institution of inmate Siordia and Plaintiff's January 19, 2011 cellmate (Interrogatory Nos. 12 & 17);

    b. File with the Court and serve on Plaintiff a privilege log or declaration describing the confidential documents that have been withheld, as well as an affidavit supporting the asserted privilege, as described in this order;

    c. Submit to the Court for *in camera* review:

        i. Documents relating to disciplinary actions or findings of misconduct against any Defendant for the acts alleged in this lawsuit (RPD No. 8); and

        ii. Confidential documents contained within Plaintiff's prison record that Defendants relied on during the January 19, 2011 hearing (RPD No. 1);

    d. If necessary, file a proposed protective order for the documents

1
referred to herein; and

2
    4.  Failure to comply with this order may result in sanctions.

3

4
IT IS SO ORDERED.

5

6
Dated:   <u>December 11, 2016</u>       /s/ *Michael J. Seng*

7
                              UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28