1

2

3

4

5

6

7

8

9                               UNITED STATES DISTRICT COURT

10                              EASTERN DISTRICT OF CALIFORNIA

11

12   EARL WARNER,                          CASE NO. 1:12-cv-01146-MJS (PC)

13                  Plaintiff,             **ORDER REGARDING DISCOVERY OF
                                           CONFIDENTIAL MATERIALS**
14          v.
                                           **SEVEN (7) DAY DEADLINE FOR
15   M. CATE, et al.,                      DEFENDANTS' PRODUCTION OF
                                           DOCUMENTS**
16                  Defendants.

17

18

19          Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil

20   rights action brought pursuant to 42 U.S.C. § 1983. The matter proceeds on Plaintiff's

21   Eighth Amendment failure to protect claim against Defendants Walker, Prokop, Davis,

22   Spralding, and Fellows, and stems from a 2011 Classification Hearing during which

23   Defendants assigned Plaintiff to the same unit as his enemy, inmate Robert Siordia.

24   **I.      Procedural Background**

25          On September 30, 2016, Plaintiff filed a motion to compel responses to seven

26   requests for the production of documents ("RPDs") as well as ten Interrogatories directed

27   to Defendant Walker. (ECF No. 126.) On December 12, 2016, the Court granted in part

and denied in part Plaintiff's motion to compel. (ECF No. 142.) In response to Plaintiff's RPD No. 1, which requested his "entire" prison record including those confidential documents that were reviewed in relation to Defendants' placement decision, Defendants were directed to submit to the Court, for *in camera* review, any withheld portion of Plaintiff's prison record file relied on by Defendants during the 2011 Classification Committee hearing.

The Court requested the files be submitted to the Court in both redacted and unredacted form, and directed Defendants to file and serve a privilege log detailing the nature of the documents withheld, as well as an affidavit signed by an individual with knowledge of the documents explaining his or her reasons for refusing to disclose the documents on privilege grounds.

On December 27, 2016, Defendants submitted to the Court for *in camera* review 21 confidential documents contained within Plaintiff's prison file that were likely reviewed by Defendants during the Classification Committee hearing. That same day, Defendants filed a privilege log (ECF No. 148) and the accompanying affidavit of Correctional Counselor II ("CCII") D. Davis in support of the privilege log. (ECF No. 148-1.)

Defendants were also directed to submit, in response to RPD No. 8, documents relating to disciplinary actions or findings of misconduct against any Defendant for the acts alleged in this lawsuit. No such documents having been submitted, the presumption is that none exist. Defendants shall, within seven days of this Order, so confirm under oath.

The Court has reviewed the documents submitted and now addresses Defendants' assertion of privilege.

## II.   Legal Standard

The Supreme Court has long noted that privileges are disfavored. <u>Jaffee v. Redmond</u>, 518 U.S. 1, 9 (1996). "The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question." <u>Tornay</u>

1    v. United States, 840 F.2d 1424, 1426 (9th Cir. 1988). Privileges are to be "strictly

2    construed" because they "impede full and free discovery of the truth." Eureka Fin. Corp.

3    v. Hartford Acc. and Indem. Co., 136 F.R.D. 179, 183 (E.D. Cal. 1991). "If the privilege is

4    worth protecting, a litigant must be prepared to expend some time to justify the assertion

5    of the privilege." Id.

6         In civil rights cases brought under section 1983, questions of privilege are

7    resolved by federal law. Kerr v. United States Dist. Ct. for the N. Dist. of Cal., 511 F.2d

8    192, 197 (9th Cir. 1975). "State privilege doctrine, whether derived from statutes or court

9    decisions, is not binding on federal courts in these kinds of cases." Kelly v. City of San

10   Jose, 114 F.R.D. 653, 655–56 (N.D. Cal. 1987).

11        "Federal common law recognizes a qualified privilege for official information."

12   Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1990) (citing Kerr, 511 F.2d

13   at 198. The discoverability of official documents should be determined under the

14   "balancing approach that is moderately pre-weighted in favor of disclosure." Kelly, 114

15   F.R.D. at 661. The party asserting the privilege must properly invoke the privilege by

16   making a "substantial threshold showing." Id. at 669. For each discovery request

17   objected to, the party must file an objection and submit a declaration or affidavit from a

18   responsible official with personal knowledge of the matters attested to by the official. Id.

19   The affidavit or declaration must include (1) an affirmation that the agency has

20   generated or collected the requested material and that it has maintained its

21   confidentiality, (2) a statement that the material has been personally reviewed by the

22   official, (3) a description of the governmental or privacy interests that would be

23   threatened by disclosure of the material to the plaintiff or plaintiff's attorney, (4) a

24   description of how disclosure under a protective order would create a substantial risk of

25   harm to those interests, and (5) a projection of the harm to the threatened interest or

26   interests if disclosure were made. Id. at 670. "The asserting party, as in any case where

27   a privilege is claimed, must sufficiently identify the documents so as to afford the

28

                                            3

requesting party an opportunity to challenge the assertion of privilege." Miller v. Pancucci, 141 F.R.D. 292, 300 (9th Cir. 1992).

**III.    Discussion**

    **A.    Documents Submitted for *In Camera* Review**

    Defendants' privilege log contains 21 items. They are described in the privilege log as follows:

| | |
|---|---|
| Ex. A: | Dec. 12, 1991 128B Confidential Chrono regarding enemy concerns between Warner and another inmate; |
| Ex. B: | Dec. 17, 1991 128 B Confidential Chrono listing confidential enemies of Warner; |
| Ex. C: | April 22, 1993 Confidential Memorandum interview with an inmate regarding safety concerns involving Warner; |
| Ex. D: | January 27, 1995 Confidential Memorandum interview with an inmate regarding safety concerns involving Warner; |
| Ex. E: | May 25, 1995 Confidential Memorandum interview with an inmate regarding Warner; |
| Ex. F: | July 12, 1995 Confidential Memorandum interview with an inmate regarding Warner; |
| Ex. G: | August 14, 1995 Confidential Memorandum interview with an inmate regarding Warner; |
| Ex. H: | August 28, 1995 Confidential memorandum regarding inmate Warner; |
| Ex. I: | May 6, 1997 Confidential Memorandum interview with an inmate regarding safety concerns with Warner; |
| Ex. J: | February 11, 1998 Confidential Memorandum interview with inmate Warner regarding his concerns for personal safety; |
| Ex. K: | March 18, 1998 Confidential 128B Informational Chrono regarding enemies of Warner; |
| Ex. L: | April 17, 1998 128B Confidential Informational Chrono regarding enemies of Warner; |
| Ex. M: | July 22, 1998 Confidential Memorandum interview with Warner regarding enemy concerns; |

4

Ex. N:  July 22, 1998 Confidential Memorandum follow up interview with Warner regarding enemy concerns;

Ex. O:  December 13, 2000 128 Confidential Chrono regarding enemy concerns for Warner;

Ex. P:  October 23, 2003 Confidential Memorandum interview with an inmate regarding safety concerns with Warner;

Ex. Q:  April 11, 2006 Confidential Memorandum interview with an inmate regarding safety concerns with Warner;

Ex. R:  June 21, 2006 128 Confidential Chrono regarding a compatibility concern with Warner;

Ex. S:  April 19, 2010 Confidential Memorandum Interview with Warner regarding safety concerns;

Ex. T:  August 18, 2010 Confidential 128B informational chrono noting interview with Warner regarding enemy concerns; and

Ex. U:  Plaintiff's CDCR 812-C Notice of Critical Information Confidential Enemies: lists available from beginning of Warner's incarceration (for CDCR E-32637) through the date of the January 19, 2011 UCC hearing.

According to Defendants:   These documents are classified as "Confidential Material" pursuant to Cal Code. Regs. tit. 15, §§ 3321(a)(1) and (2) and 3370(d)(e). (Decl. of D. Davis in Supp. of D.'s Privilege Log (ECF No. 148-1) ¶ 6.) If any of the information contained within were made known to an inmate it would endanger the safety of inmates and correctional staff and thereby jeopardizing institutional security. (Id. ¶ 7.) Such documents may be released only pursuant to a court order or under the provisions set forth in Cal. Code Regs. tit 15, § 3370(e). (Id. ¶ 6.)  A protective order would be insufficient to protect the confidentiality of the documents, since the threat of sanctions for disobeying a protective order would be insufficient to deter a prisoner from disseminating and profiting from confidential information. (Id. ¶ 10.)

**B.** **Analysis**

The Court has reviewed each and every of the documents submitted for *in camera* review and makes the following findings and order regarding their production:

1              **1.      Exhibits A, B, C, D, E, F, G, H, I, P, Q, and R**

2              These exhibits document other inmates' concerns about Plaintiff and reports by

3      inmates the nature of which could expose them to Plaintiff's enmity or retaliation. They

4      include allegations, some dating back to 1998, by inmates that Plaintiff engaged in illegal

5      activity or used violence or intimidation tactics against them or others. None of the

6      information therein relate to the reasonableness of Plaintiff's expressed fear of Siordia.

7      They have no potential relevance to the claims in this lawsuit and are unlikely to lead to

8      the discovery of admissible evidence. The Court will not order their disclosure.

9              **2.      Exhibit U**

10             Exhibit U contains Plaintiff's confidential enemy list from the beginning of his

11     incarceration through January 2011. According to Defendants, inmates can have both

12     confidential and non-confidential enemy lists. (Davis Decl. ¶ 8.)   Enemies are non-

13     confidential where both parties are aware of the enemy concern.   Confidential enemy

14     lists identify informants who have provided information about another inmate, thereby

15     exposing themselves to possible harm if such disclosures were revealed. (Id.) Plaintiff's

16     confidential enemy lists may include the names of inmates who Plaintiff may not know

17     regard him as an enemy.   They do not include inmate Siordia's name; he does not

18     appear on Plaintiff's confidential enemy list.

19             Again, the Court sees no potential relevancy of this information.   The Court

20     therefore will not order disclosure of Exhibit U.

21             **3.      Exhibits J, K, L, and N**

22             These documents relate to Plaintiff's self-reported safety concerns on Facility C of

23     High Desert State Prison ("HDSP") in 1998. Plaintiff named two inmates as potential

24     threats. Those inmates are not affiliated with the instant case. While the reviewing officer

25     found Plaintiff's claims to be unsubstantiated, one inmate was relocated to a different

26     housing unit because of Plaintiff's stated concerns.

27

28

As these documents relate to enemy concerns that are more than eighteen years old and involve inmates with no relation to this case, the Court finds Exhibits J, K, and L are not relevant and will not order their disclosure.

### 4.    Exhibit M

This memorandum documents a July 22, 1998 interview with Plaintiff during which he discussed activity on Facility C of High Desert State Prison ("HDSP"). Plaintiff identified inmates who were added to his confidential enemy list.

As this document relates to confidential information that is more than eighteen years old and involves inmates that are not affiliated with this lawsuit, the Court finds Exhibit M is not relevant and will not order its disclosure.

### 5.    Exhibit O

This chrono relates to Plaintiff's self-reported enemy concerns while at the California Substance Abuse Treatment Facility ("SATF") in December 2000.  As a result of Plaintiff's stated concerns, Plaintiff was placed in administrative segregation pending possible referral as a "Sensitive Needs" prisoner. It was also recommended that an inmate Plaintiff deemed an enemy be added to Plaintiff's confidential enemy list.

As this document relates to enemy concerns that are more than sixteen years old and involve an inmate not affiliated with this lawsuit, the Court finds Exhibit O is not relevant and will not order its disclosure

### 6.    Exhibit S

This document memorializes an April 16, 2010 interview with Plaintiff in which he discussed inmate concerns on Facility A at Salinas Valley State Prison ("SVSP") involving inmates of the "Northern D/O" gang prompting prison officials to recommend Plaintiff remain in administrative segregation pending transfer to another facility.

Exhibits S relates to the circumstances that led to Plaintiff's transfer from SVSP to PVSP, to wit, Plaintiff's enemy concerns and could conceivably have some relevance to

1   Plaintiff's claim here. Defendants will therefore be directed to disclose Exhibit S, subject

2   to the protections listed below.

3   **7.   Exhibit T**

4   This chrono memorializes an August 18, 2010 interview with Plaintiff at SVSP

5   concerning Plaintiff's self-expressed enemy concerns about the "2-5" gang who Plaintiff

6   believed would assault him if given the chance.

7   Defendants will therefore be required to disclose Exhibit T, subject to the

8   protections listed below.

9   **IV.   Redactions and Protective Order**

10   Defendants propose redacting from exhibits provided to Plaintiff the names,

11   CDCR numbers, housing locations, nicknames, and gang affiliations of all inmates other

12   than Plaintiff and all identifying information relating to officials who prepared or reviewed

13   the documents.

14   Exhibits S and T will be provided to Plaintiff with the redactions proposed by

15   Defendants.  If, upon review of them, Plaintiff concludes they contain information that is

16   relevant and in genuine need of corroboration, he may petition the Court for means of

17   identifying and contacting individuals referred to therein upon a showing of good cause

18   to include an explanation of his basis for contending that such information would be

19   helpful to his case and a statement of what he hopes to seek and secure from any such

20   witness.

21   Subject to further order of the Court, Plaintiff may receive and use the information

22   in Exhibits S and T, subject to the redactions above, in litigating this matter subject to

23   and strictly in accordance with the following terms and conditions:

24   (a)  Plaintiff may not disclose the content to anyone other than his

25   appointed or retained counsel, if any; said counsel's administrative staff

26   necessary to Plaintiff's litigation of this matter;  Court personnel and stenographic

27

28

reporters necessarily involved in these proceedings; any outside expert or consultant retained by Plaintiff's counsel for purposes of this action.

(b) Plaintiff can review the confidential materials, but not copy them or retain them or copies of them in his possession. The Litigation Coordinator at Plaintiff's institution shall allow Plaintiff a reasonable time of up to 90 minutes to review the documents and make notes relating to them.   If Plaintiff obtains counsel, his counsel will be permitted to retain copies of the documents and review and discuss them with Plaintiff without restriction.

(c) At the conclusion of the proceedings in this case, including any period for appeal or collateral review, or upon other termination of this litigation, Plaintiff and counsel for Plaintiff, if any, shall destroy all confidential materials and all copies of such material in their possession or return such materials to counsel for Defendants with sworn declarations stating they have done so.

(d) All confidential material in this matter shall be used solely in connection with the litigation of this matter, or any related appellate proceeding and collateral review, and not for any other purpose, including any other litigation or proceeding.

**V.      Order**

Based on the foregoing, it is HEREBY ORDERED that:

1. Within **seven** days of this order, Exhibits S and T of Defendants' supplemental privilege log shall be produced to Plaintiff and his counsel, if he has any, subject to the Protective Order and with the redactions referred to above. The documents shall be kept in the care and custody of the institution's Litigation Coordinator and Plaintiff's counsel, if he has any. The Litigation Coordinator shall make arrangements for Plaintiff to have up to 90 minutes to review the materials. Plaintiff may take notes, but no copy of the materials shall be provided to Plaintiff.

2.  Within **seve**n days of this order, Defendants shall confirm with the Court that no documents responsive to RPD No. 8 exist.

IT IS SO ORDERED.

Dated:   January 18, 2017          /s/ *Michael J. Seng*
                                   UNITED STATES MAGISTRATE JUDGE

10