UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARL WARNER,<br><br>             Plaintiff,<br><br>     v.<br><br>M. CATE, et al.,<br><br>             Defendants. | CASE NO. 1:12-cv-01146-MJS (PC)<br><br>**PRETRIAL ORDER**<br><br>**Exchange of Trial Exhibits Deadline:** August 11, 2017<br><br>**Motions in Limine Deadline:** August 25, 2017<br><br>**Oppositions to Motions in Limine Deadline:** September 1, 2017<br><br>**Other Pretrial Submissions Deadline:** September 15, 2017<br><br>**Telephonic Hearing on Motions in Limine (if needed):** September 20, 2017 at 10:30 a.m. in Courtroom 6 (MJS)<br><br>**Jury Trial:** September 27, 2017, at 8:30 a.m. in Courtroom 6 (MJS) (Three Day Trial) |

Plaintiff is a state prisoner proceeding with counsel and in forma pauperis in this civil rights action filed July 12, 2012 pursuant to 42 U.S.C. § 1983. The action proceeds against Defendants Walker, Fellows, Prokop, Spralding, and Davis (formerly McGaha) on Plaintiff's Eighth Amendment failure to protect claim.

On July 28, 2017, the parties participated in a telephonic pretrial confirmation hearing. (ECF No. 192.) Attorneys Teresa MacLean and Daniel Hubin appeared on

behalf of Plaintiff, and Supervising Deputy Attorney General Monica Anderson and Deputy Attorney General Erin Doering appeared on behalf of Defendants. The following pretrial order now issues.

## I.      Jurisdiction and Venue

The Court has subject matter jurisdiction over this federal civil rights action. 28 U.S.C. §§ 1331 and 1343(a)(3).

Venue is proper under 28 U.S.C. § 1391 because the conduct allegedly occurred in this judicial district.

## II.     Jury Trial

The parties have demanded a jury trial.

## III.    Brief Summary of Parties' Positions

Because many of the relevant facts are in dispute, the Court here briefly summarizes its understanding of the parties' respective positions.

Plaintiff alleges he was classified as a Sensitive Needs Yard ("SNY") inmate from 2000 to February 2011. In January 2011, Plaintiff was transferred from Salinas Valley State Prison ("SVSP") to Pleasant Valley State Prison ("PVSP") due to enemy concerns with members of the Northern Riders gang at SVSP. Upon his transfer, Plaintiff received a threat of harm from inmate Robert Siordia, the leader of the Northern Riders at PVSP with whom Plaintiff had had enemy concerns in the past. During his January 19, 2011 Unit Classification Committee ("UCC") hearing, at which Plaintiff's housing placement would be determined, Plaintiff relayed his fears regarding inmate Siordia and the Northern Riders to Defendants. Defendant Walker, who was Chairperson of the committee, told Plaintiff he was "out of places to go" and would have to "man up." Defendant Walker instructed officers to retrieve Siordia from his housing unit and place him in a holding cell adjacent to Plaintiff so that the two could "work out their issues." Immediately after the hearing, Plaintiff was moved to Facility A, the same unit where Siordia was housed. For two days, members of the Northern Riders gang loitered

outside of Plaintiff's cell, rendering Plaintiff too afraid to leave his cell for meals. On January 20, 2011, Plaintiff, overcome with fear and stress, slit his own wrist and was transferred out of the unit.

Defendants acknowledge that inmate Siordia was classified as Plaintiff's enemy in 2005, but point out he was removed from Plaintiff's enemy list at Plaintiff's request in 2008, and was not on Plaintiff's enemy list between 2008 and the January 19, 2011 hearing. Defendants deny that Plaintiff raised any concerns about Siordia or the Northern Riders during his UCC hearing—if he had, Defendants would have followed set procedures to investigate and resolve the safety concerns. They would not have exposed Plaintiff to a plausible risk of harm. In any event, the only unit for Plaintiff, an SNY prisoner, was where he was placed, Facility A. Plaintiff was not harmed by any inmate in Facility A. His only wounds were self-inflicted.

## IV. Undisputed Facts

The Court believes the following facts are not in dispute and it intends to submit them to the jury as stipulated facts:

1. Plaintiff was incarcerated within the California Department of Corrections and Rehabilitations ("CDCR") and housed at Pleasant Valley State Prison ("PVSP") at the time of the events giving rise to the claims at issue here.

2. Plaintiff was classified as a Sensitive Needs Yard (SNY) inmate continuously from 2000 to and through February 2011.

3. Facility A at PVSP is a SNY.

4. At times material to the claims at issue, Defendants Davis, Spralding, Prokop, and Fellows were employed by PVSP as Correctional Counselors, and Defendant Walker was employed by PVSP as a Correctional Captain.

5. Though denying that they acted or failed to act as Plaintiff alleges, to the extent they so acted, Defendants would have been acting under color of state law.

6. On January 6, 2011, Plaintiff was transferred from Salinas Valley State Prison ("SVSP") to PVSP and placed in an orientation cell.

7. On January 19, 2011, Plaintiff was brought before the Facility A Unit Classification Committee ("UCC") at PVSP for an initial program review.

8. Defendant Walker was the Chairperson of the January 19, 2011 UCC.

9. Defendant Fellows was the Recorder for the January 19, 2011 UCC hearing and charged with preparing a "Form 128-G Chrono" to document the meeting.

10. Following the UCC meeting, Plaintiff was moved to Housing Unit Two in Facility A at PVSP.

11. On January 20, 2011, at Housing Unit Two, Plaintiff cut his left wrist.

12. On January 20, 2011, Plaintiff was transported from Housing Unit Two to the PVSP Emergency Treatment Center and admitted into a suicide watch crisis bed for observation and treatment.

13. Plaintiff was subsequently transferred into the custody of the Department of State Hospitals at Vacaville, California, for mental health care.

## V. Disputed Facts

1. Whether Defendants Davis, Spradling, and Prokop were present at the January 19, 2011 UCC hearing.

2. Whether Plaintiff advised Defendants during the January 19, 2011 UCC hearing that he was transferred to PVSP because of safety concerns involving the Northern Riders gang at SVSP.

3. Whether Plaintiff informed Defendants during the January 19, 2011 UCC hearing that he had safety concerns concerning Northern Riders gang leader Robert Siordia and his associates.

4. Whether Plaintiff advised Defendants during the January 19, 2011 UCC hearing that Siordia had given him a verbal warning not to come to the PVSP SNY at Facility A.

4

5. Whether one of the Defendants at the January 19, 2011 UCC hearing told Plaintiff he had nowhere else to go and so needed to work out his issues with Siordia.

6. Whether on January 19, 2011, Defendants told Siordia or caused him to be told that Plaintiff had accused him of threatening Plaintiff.

7. Whether Plaintiff and Siordia were placed into adjacent holding cells and told by, or on behalf of, Defendants to "work out" their issues.

8. Whether Defendants knew Siordia and the Northern Riders gang posed a substantial risk to Plaintiff's safety.

9. Whether Facility A was the only facility at PVSP where Plaintiff could have been housed.

10. Whether Defendants knew or had reason to know Plaintiff would harm himself if housed in Facility A.

11. Whether Plaintiff was taken forcibly to Facility A after the January 19, 2011 UCC hearing.

12. Whether Defendants' actions or inactions caused Plaintiff's physical, mental or emotional injuries.

**VI.    Disputed Evidentiary Issues**

   **A.    Plaintiff**

Plaintiff intends to file motions in limine to bar Defendants from presenting evidence of or making reference to: 1) Plaintiff's criminal history; 2) the criminal history of Plaintiff's witnesses; 3) Plaintiff's prison disciplinary record; 4) Plaintiff's history of administrative appeals and litigation unrelated to the instant lawsuit; and 5) any documents not previously disclosed to Plaintiff.

Plaintiff reserves the right to file a motion in limine to bar testimony of Defendants' expert witnesses if it is revealed through deposition that their opinions are based in whole or in part on materials that should have been produced during discovery and

which were withheld from Plaintiff.

At this time, Plaintiff does not object to any of Defendants' proposed witnesses. Plaintiff anticipates objecting to Defendants' proposed trial exhibits.

**B.    Defendants**

**1.    Witnesses**

Defendants object to any testimony by any witness regarding Plaintiff's alleged enemy concerns with the Northern Riders gang.

**2.    Documentary Evidence**

Defendants plan to object to Plaintiff's introduction of the following documentary evidence:

1. Copies of Plaintiff's mental health care appeals/complaints between 2011 and 2015.

2. Classification committee hearing documents that post-date the January 19, 2011 hearing at issue.

3. Administrative appeals that post-date the January 19, 2011 hearing at issue.

4. Any administrative grievances that are not related to Plaintiff's enemy concerns with Siordia except if and as Plaintiff demonstrates they were seen by Defendants.

5. Sections of the CDCR Department Operations Manual that were not in effect at the relevant time.

6. The declarations of any incarcerated witnesses who do not testify at trial.

7. Any evidence regarding Plaintiff's alleged concerns with the Northern Riders prison gang.

8. Any inmate witness declarations that are not based on actual first-hand knowledge.

Defendants also reserve objections to specific testimony and exhibits until such time as Defendants have had the opportunity to hear such testimony and examine such

exhibits.

**VII.    Relief Sought**

Plaintiff seeks compensatory damages in the amount of $650,000 and punitive damages in the amount of $650,000.  Plaintiff also seeks costs and attorneys' fees. In the event the jury finds that Plaintiff's constitutional rights were violated but Plaintiff suffered no quantifiable damages, Plaintiff requests nominal damages.

Defendants seek judgment in their favor and costs.

**VIII.    Points of Law**

**A.    Liability and Linkage Under the Civil Rights Act**

In order to prevail under section 1983, Plaintiff must first demonstrate a violation of his federally protected constitutional rights. Havas v. Thornton, 609 F. 2d 372, 374 (9th Cir. 1979); Rutherford v. City of Berkeley, 780 F. 2d 1333, 1446 (9th Cir. 1986); Baker v. McCollan, 443 U.S. 137, 140 (1979).

Plaintiff must prove that each Defendant acted "under color of state law," 42 U.S.C. § 1983, and that each individual defendant personally participated in the constitutional violation—that each of the individual defendants either performed affirmative acts, or failed to perform legally required duties, which violated Plaintiff's constitutional rights. Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff must prove the unlawful conduct of each defendant. Vague and conclusory claims concerning the involvement of official personnel in civil rights violations are not sufficient. Ivey v. Board of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). Under 42 U.S.C. § 1983, there must be an actual connection or link between the actions of the defendants and the deprivation suffered by the Plaintiff. See Monell v. Dep't of Social Services, 426 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).

## B.    Eighth Amendment Failure to Protect

Prison officials have a duty to protect prisoners from violence at the hands of other inmates. Farmer v. Brennan, 511 U.S. 825, 833 (1994). The failure of prison officials to protect inmates may rise to the level of an Eighth Amendment violation when "(1) the deprivation alleged is 'objectively, sufficiently serious' and (2) the prison officials had a 'sufficiently culpable state of mind,' acting with deliberate indifference." Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005) (quoting Farmer, 511 U.S. at 834).

With regard to the first prong, an inmate making a failure to protect claim satisfies the "sufficiently serious deprivation" requirement by "show[ing] that he is incarcerated under conditions posing a substantial risk of serious harm." Lemire v. California Dep't of Corr. & Rehab., 726 F.3d 1062, 1075 (9th Cir. 2013) (quoting Farmer, 511 U.S. at 834). While it is true that the determination of the point at which a risk of harm becomes sufficiently substantial to implicate the Eighth Amendment has not been fleshed out, Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1050-51 (9th Cir. 2002) (citing Farmer, 511 U.S. at 834), "[t]he objective question of whether a prison officer's actions have exposed an inmate to a substantial risk of serious harm is a question of fact, and as such must be decided by a jury if there any room for doubt." Lemire, 726 F.3d at 1075-76 (citations omitted). Moreover, in order to satisfy the objective prong, "it is enough for the inmate to demonstrate that he was exposed to a substantial risk of some range of serious harms; the harm he actually suffered need not have been the most likely result among this range of outcomes." Id. at 107.

To satisfy the second prong, deliberate indifference, Defendants must have been aware of facts from which the inference could be drawn that a substantial risk of harm exists, and they must also have drawn and disregarded that inference. Farmer, 511 U.S. at 837. While mere negligence on the part of Defendants is not enough to prove liability, id. at 836, a prison official does "not escape liability if the evidence show[s] he merely refused to verify underlying facts that he strongly suspected to be true, or declined to

confirm inferences of risk that he strongly suspected to exist." Id. at 843, n. 8.

### C. Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Resolving a claim of qualified immunity requires courts to determine whether the facts alleged, when taken in the light most favorable to the plaintiff, violated a constitutional right, and if so, whether the right was clearly established.  Saucier v. Katz, 533 U.S. 194, 201 (2001). While often beneficial to address in that order, courts have discretion to address the two-step inquiry in the order they deem most suitable under the circumstances. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

"The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." Pearson, 555 U.S. at 244. Therefore, "[i]f the [defendant's] mistake as to what the law requires is reasonable . . . the [defendant] is entitled to the immunity defense." Saucier v. Katz, 533 U.S. at 205. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

### D. Punitive Damages

Plaintiff has the burden of proving by a preponderance of the evidence what, if any, punitive damages should be awarded. Ninth Circuit Model Civil Jury Instructions § 5.5 (2008). The jury must find that Defendants' conduct was "motivated by evil motive or intent, or . . . involve[d] reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1986). Acts or omissions which are malicious, wanton, or oppressive support an award of punitive damages. Dang v. Cross, 422 F.3d 800, 807-08 (9th Cir. 2005).

### E. Federal Rules of Evidence

Federal Rules of Evidence 608 and 609 provide that evidence of a witness's prior

felony conviction or instance of conduct demonstrating a propensity to lie may be used to impeach that witness's testimony. Federal Rule of Evidence 404(b) provides that evidence of prior crimes, wrongs, or acts cannot be used to prove the character of the person in order to show conduct in conformity with that character trait. Such prior acts may be admissible for other purposes only, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

## IX.   Abandoned Issues

Plaintiff abandons the prayer in his first amended complaint that Defendants be ordered to produce a complete record of the January 19, 2011 UCC hearing.

Defendants have not abandoned any issues.

## X.   Witnesses

The following is a list of witnesses that the parties wish to call at trial. NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 281(b)(10).

### A.   Plaintiff's Requested Witnesses

Plaintiff intends to call the following witnesses at trial[1]:

1. Plaintiff Earl Warner

2. Inmate Robert Siordia

3. Inmate Paul Salcido

4. Custodian of Plaintiff's Medical Records (in the event Defendants do not stipulate to their authenticity)

5. Custodian of Plaintiff's Central File (in the event Defendants do not stipulate to its authenticity)

---

[1] Plaintiff timely filed a motion for the attendance of incarcerated witnesses Robert Siordia, Paul Salcido, Van-Albert Siegrist, and Chad Galvin. (ECF No. 181.) The Court granted Plaintiff's motion in part (ECF No. 191), and will issue writs of Habeas Corpus ad Testificandum for inmates Salcido and Siordia prior to trial.

At the pretrial conference, Plaintiff withdrew his previously stated intention to call a medical expert.

**B.    Defendants' Requested Witnesses**

1. Defendant D. Davis

2. Defendant W. Fellows

3. Defendant R. Prokop

4. Defendant R. Spralding

5. Defendant A. Walker

6. Expert witness Dr. K. B. Olsen, Senior Psychologist and Enhanced Outpatient Program Director at the California Substance Abuse Treatment Facility ("CSTAF")

7. Expert witness Dr. R. Kim Kumar, Chief Medical Executive at SVSP.

8. Expert witness F. Douthat, Correctional Counselor III ("CC III") at PVSP and custodian of Plaintiff's Central File and Medical Records (if needed)

Defendants reserve the right to list additional witnesses, including expert and rebuttal witnesses, as deemed appropriate at the time of trial.

**XI.    Exhibits**

The following is a list of documents or other exhibits that the parties expect to offer at trial. NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 281(b)(11). Nothing herein is intended to reflect on the admissibility of such documents.

**A.    Joint Exhibits**

Per their pretrial statements, the parties both intend to offer the following exhibits:

1. Plaintiff's relevant medical and mental health records.

2. Plaintiff's CDCR 812-C non-confidential enemy list from 2005 to 2015.

3. The January 19, 2011 CDCR 128G classification committee chrono.

4. Plaintiff's CDCR chronological movement history.

The parties are directed to ensure against duplication of exhibits by offering additional joint exhibits where possible.

**B.    Plaintiff's Exhibits**

Plaintiff intends to introduce the following exhibits:

1. Copies of Plaintiff's formal mental health care appeals/complaints between 2011 and 2015;

2. Documents pertaining to classification committee hearings Plaintiff has been involved in between 2010 and 2017;

3. Documents pertaining to administrative appeals/complaints Plaintiff has submitted concerning classification committee actions between 2010 and 2017;

4. Plaintiff's relevant central file records;

5. California Department of Corrections and Rehabilitation Department Operations Manual (D.O.M.) Chapter 3, Article 22; Chapter 4, Article(s) 28, 33, 37; Chapter 5, Articles 3-4, 6-8, 11, 22, 46 and 53; Chapter 6, Articles 2, 5, 7, 9; Chapter 7, Articles 1, 3-5; Chapter 9, Articles 2, 7; and other portions as are relevant to the claims and defenses in this action;

6. Declarations of incarcerated witnesses as submitted in support of Plaintiff's opposition to Defendants' Motion for Summary Judgment.

**C.    Defendants' Exhibits**

Defendants intend to introduce the following exhibits:

1. Abstracts of Judgment representing felony convictions and sentences of Plaintiff's inmate witnesses;

2. April 25, 2008 CDCR 128B General Chrono noting Plaintiff's request to remove Siordia from his enemy list;

12

3. October 8, 2015 CDCR 128B General Chrono noting Plaintiff's request to add Siordia back onto his enemy list;

4. Abstract(s) of Judgment representing Plaintiff's felony conviction(s) and sentence(s);

5. Plaintiff's CDCR 128G Classification Chronos from SVSP between 2008 and 2011.

**XII.    Discovery Documents**

**A.    Plaintiff's Discovery Documents**

Plaintiff expects to offer the following:

1. Defendant Davis' Responses to Plaintiff's Interrogatories (Set No. 1), dated August 22, 2016.

2. Defendant Fellows' Responses to Plaintiff's Interrogatories (Set No. 1), dated August 22, 2016.

3. Defendant Prokop's Responses to Plaintiff's Interrogatories (Set No. 1), dated August 22, 2016.

4. Defendant Spradling's Responses to Plaintiff's Interrogatories (Set No. 1), dated August 22, 2016.

5. Defendant Walker's Responses to Plaintiff's Interrogatories (Set No. 1), dated August 22, 2016.

6. Responses to Plaintiff's Request for Admissions to Defendant Walker, dated August 22, 2016.

7. Defendants' Responses to Plaintiff's Motion/Request for Production of Documents, dated August 22, 2016.

8. Defendants' Disclosure of Expert Witness Information, dated December 21, 2016.

9. Declaration of D. Davis in Support of Defendants' Privilege Log and Supplemental Responses to Plaintiff's Motion/Request for Production of

Documents, dated December 27, 2016.

10. Defendants' Supplemental Responses to Plaintiff's Motion/Request for Production of Documents, dated December 27, 2016.

11. Plaintiff's Interrogatories and Requests for Production of Documents, dated December 31, 2016.

12. Defendants' Amended Supplemental Responses to Plaintiff's First Set of Interrogatories to Defendant Walker, dated January 27, 2017.

13. Expert Report of Dr. Kumar, dated January 9, 2017.

14. Expert Report of Kenneth Brent Olsen Psy.D., dated December 21, 2016.

Plaintiff reserves the right to offer deposition transcripts for inmate Siordia and Defendants Walker and Fellows, or portions thereof, at the time of trial.

**B.     Defendants' Discovery Documents**

Defendants reserve the right to offer Plaintiff's deposition transcript, or portions thereof, and appended exhibits at the time of trial for purposes of impeachment. Defendants are not aware of any other discovery documents to be offered at trial.

Defendants object to the introduction of their discovery responses as listed in Plaintiff's pretrial statement to the extent that these documents may be used for any purpose other than impeachment.

To the extent that Plaintiff seeks to object to the use of discovery documents not disclosed or which were "withheld from Plaintiff," (ECF No. 180 at p. 5), Defendants request that any documents that were equally available to Plaintiff be allowed into evidence should the need arise at trial. (See ECF No. 48 at p. 2:18-19.)

**XIII.   Further Discovery or Motions**

**A.     Plaintiff's Requests**

Plaintiff filed a motion for the attendance of incarcerated witnesses. (ECF No. 181.) On July 26, 2017, the Court granted in part and denied in part Plaintiff's request. (ECF No. 191.) Writs ad testificandum will be issued for inmates Siordia and Salcido at

the appropriate time.

On June 9, 2017, Plaintiff filed a motion to continue trial to accommodate the schedule of his proposed expert witness. (ECF No. 182.) On June 22, 2017, Plaintiff withdrew this motion. (ECF No. 186.)

On June 13, 2017, Plaintiff requested leave to reopen discovery for the limited purpose of taking the depositions of Defendants. Defendants opposed the request. On June 23, 2017, the Court held a telephonic discovery dispute conference and granted Plaintiff's request to reopen discovery to depose Defendants Walker and Fellows only. (ECF No. 188.) The parties were given the opportunity to file a formal motion contesting the Court's decision; neither did so.

**B. Other**

Plaintiff and Defendants have agreed to take the depositions of inmate Robert Siordia, Defendants Fellows and Walker, and expert witness Kumar on mutually agreeable dates.

The parties anticipate no other discovery or motion activity beyond motions in limine.

**XIV. Stipulations**

The parties stipulate to the authenticity of Plaintiff's medical records, the documents contained in Plaintiff's central file, the documents provided in Defendants' discovery responses, and the 2011 CDCR DOM. The undisputed facts set forth above are stipulated to.

**XV. Amendments/Dismissals**

In his pretrial statement, Plaintiff moved to amend the pleadings to add a due process claim. (ECF No. 180 at 12.) At the pretrial conference, Plaintiff recanted that intent.

**XVI. Settlement Negotiations**

The parties have stated a willingness to engage in renewed settlement

negotiations prior to trial. The Court has issued a separate order setting a settlement conference for August 16, 2017. (ECF No. 195.)

**XVII.  Agreed Statements**

None.

**XVIII.  Separate Trial of Issues**

Defendants seek to bifurcate and separately try issues of liability and damages. Plaintiff objects.

The Court may order a separate trial on the issues of liability and damages for convenience, to avoid prejudice, or to expedite the proceedings. Fed. R. Civ. P. 42(b). The decision to bifurcate is committed to the discretion of the trial court. Davis & Cox v. Summa Corp., 751 F.2d 1507, 1517 (9th Cir. 1985). Courts consider factors such as juror confusion, prejudice to the parties, and separability of the issues. Rios v. Tilton, No. 2:07-cv-0790-KJN, 2016 WL 29567 (E.D. Cal. Jan. 4, 2016).

Here, the issue is whether Defendants knew or should have known of the substantial risk of harm Plaintiff allegedly faced if housed in Facility A at PVSP. Insofar as Plaintiff's injuries reflect somewhat on the nature of the risk that he believed he faced and hence on the credibility of his claims that he warned Defendants of his fears, the Court finds that a single trial on the issues of liability and general damages will be most efficient and economical and least likely to create confusion.  Accordingly the Court will not bifurcate the issues of liability and general damages.  It will, however, bifurcate the issue of punitive damages if, at the first phase of trial, the jury finds Defendants liable for punitive damages.  A second phase of trial will then be convened to determine the amount of punitive damages.

**XIX.  APPOINTMENT OF COUNSEL**

On January 20, 2017, the Court granted Plaintiff's request for the appointment of counsel. (ECF Nos. 143 & 161.)

## XX.    ATTORNEY'S FEES

Each party seeks to recover attorney's fees and costs if he or they prevail. Local Rule 293.

## XXI.   FURTHER TRIAL PREPARATION

### A.    Trial Exhibits

The parties should exchange their trial exhibits with each other no later than August 11, 2017.

Plaintiff and Defendants shall submit the original and five copies of all trial exhibits, along with exhibit lists, to Judge Seng's chambers in Fresno no later than September 15, 2017. Plaintiff's exhibits shall be pre-marked with numbers preceded by the designation "P-___" (e.g., P-1, P-2). Defendants' exhibits shall be pre-marked with letters preceded by the designation "D-___" (e.g. D-A, D-B).

The parties are required to meet and confer to agree upon and identify their joint exhibits, if any. Joint exhibits must be pre-marked with numbers preceded by the designation "J-__" (e.g., J-1, J-2), and counsel shall submit the original and five copies of the joint trial exhibits, with exhibit lists, no later than September 15, 2017.

### B.    Motions in Limine Hearing and Briefing Schedule

Any party may file a motion in limine. The purpose of a motion in limine is to establish in advance of the trial that certain evidence should not be offered at trial. Although the Federal Rules do not explicitly provide for the filing of motions in limine, the Court has the inherent power to hear and decide such motions as a function of its duty to expeditiously manage trials by eliminating evidence that is clearly inadmissible for any purpose. Luce v. United States, 469 U.S. 38, 41 n.4 (1984); Jonasson v. Lutheran Child and Family Servs., 115 F. 3d 436, 440 (7th Cir. 1997). The Court will grant a motion in limine, and thereby bar use of the evidence in question, only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. Id.; Hawthorne Partners v. AT & T Tech., Inc., 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).

All motions in limine must be served on the other party/parties, and filed with the Court, by August 25, 2017. Any motion in limine must clearly identify the nature of the evidence that the moving party seeks to prohibit the other side from offering at trial.

Any opposition to a motion in limine must be served on the other party, and filed with the Court, by September 1, 2017.

If and as it deems necessary, the Court will hear telephonic arguments on motions in limine, on September 20, 2017 at 10:30 a.m. Counsel shall appear telephonically by calling **(888) 204-5984** and entering access code **4446176#**. Rulings on said motions will be issued on or before the morning of trial.

Whether or not a party files a motion in limine, that party may still object to the introduction of evidence during the trial.

**C.      Other**

The parties are relieved of their obligation under Local Rule 285 to file trial briefs. If they nevertheless wish to file briefs, they must do so on or before September 15, 2017.

The Court will prepare the verdict form and give the parties an opportunity to review it on the morning of trial. If the parties wish to submit a proposed verdict form for consideration, they must do so on or before September 15, 2017.

Proposed jury instructions shall be submitted on or before September 15, 2017. All jury instructions must be submitted in duplicate: one set will indicate which party proposes the instruction, with each instruction numbered or lettered, and containing citation of supporting authority, and the customary legend, i.e., "Given, Given as Modified, or Refused," showing the Court's action, with regard to each instruction; one set will be an exact duplicate of the first, except it will not contain any identification of the party offering the instruction or supporting authority or the customary legend of the Court's disposition. The parties shall provide the Court with a copy of their proposed jury instructions via e-mail at: **mjsorders@caed.uscourts.gov**. The Court will prepare the jury instructions for the parties' review on the morning of trial. In selecting proposed

instructions, the Court shall use Ninth Circuit Model Civil Jury Instructions to the extent possible.

Proposed voir dire questions, if any, shall be filed on or before September 15, 2017. Local Rule 162.1.

The parties may serve and file a non-argumentative, brief statement of the case suitable for reading to the jury at the outset of jury selection on or before September 15, 2017. The Court will consider the parties' statements but will finalize the statement. The parties will be provided with the opportunity to review the Court's prepared statement on the morning of trial.

The parties shall submit a copy of any proposed videotape or DVD to Judge Seng's chambers in Fresno by 4:00 p.m. on September 15, 2017. If a written transcript of audible words on the tape is available, the Court requests that the transcript be submitted along with the videotape or DVD, solely for the aid of the Court.

If any counsel intends to use a laptop computer for presentation of evidence or intends to use any audio/visual equipment belonging to the Court, he or she shall contact Courtroom Deputy Megan Lafata at least one week prior to trial so that any necessary arrangements and/or training may be scheduled.

## XXII. OBJECTIONS TO PRETRIAL ORDER

Any party may, within **fourteen days** after this order issues, file and serve written objections to any of the provisions of this Order. Such objections shall specify the requested modifications, corrections, additions or deletions.

## XXIII. RULES OF CONDUCT DURING TRIAL

### A. General Rules

1. All participants in the trial shall conduct themselves in a civil manner. There shall be no hostile interchanges between any of the participants.

2. All oral presentations shall be made from the counsel table, unless otherwise permitted by the Court.

3. Sidebar conferences are discouraged. Legal arguments or discussion of issues outside the presence of the jury should be done during recesses.

4. Counsel shall advise their respective clients and witnesses not to discuss any aspect of the case in the common areas of the courthouse accessible to the jurors, such as the lobby, the elevators, the hallways and the cafeteria.

**B.     Jury Selection**

The Court will conduct voir dire to be supplemented by written questions submitted by counsel prior to trial. The Court may allow brief direct questioning by counsel.

**C.     Opening Statements**

Counsel may use visual aids in presenting the opening statement. However, any proposed visual aids shall be shown to opposing counsel before opening statement. Furthermore, counsel shall submit any materials he or she intends to use in opening statements to Judge Seng's Fresno chambers at least one week prior to trial.

**D.     Case in Chief**

1. Counsel shall have his/her witnesses readily available to testify so that there are no delays in the presentation of evidence to the trier of fact.

2. At the close of each trial day, counsel shall disclose his/her anticipated witnesses and order of presentation for the next day, so that any scheduling or evidentiary issues may be raised at that time.

**E.     Witnesses**

1. Before approaching a witness, counsel shall secure leave of Court to approach the witness.

2. Before approaching a witness with a writing, counsel shall first show the writing to opposing counsel.

**F.     Exhibits**

1. All exhibits shall be marked and identified in accordance with the instructions

in this pretrial order.

2. An exhibit shall not be published to the jury until it has been admitted into evidence and counsel has secured leave of Court to publish the exhibit.

3. The Court usually will conduct an on the record review of the exhibits that have been admitted in evidence at the conclusion of each party's case in chief and after each party has rested its entire case. It is, however, the parties' obligation to ask the Court to do so.

**G.    Objections**

1. No speaking objections or arguments are permitted in the presence of the jury. Counsel shall state the specific legal ground(s) for the objection, and the Court will rule based upon the ground(s) stated. The Court will permit counsel to argue the matter at the next recess.

2. The Court will not assume that any objection made also implies with it a motion to strike an answer that has been given. Therefore, counsel who has made an objection, and who also wishes to have an answer stricken, shall also specifically move to strike the answer.

**H.    Closing Argument**.

Counsel may use visual aids in presenting the closing argument. However, any proposed visual aids shall be shown to opposing counsel before closing argument.

**I.    Trial Protective Order**

Plaintiff's status as a prisoner requires that he remain in leg restraints at all times and subject to appropriate security measures. However, Plaintiff will not be required to wear handcuffs when he appears before the jury. Furthermore, a drape will be placed over Plaintiff's table so that the leg restraints are not visible to the jury.

Plaintiff may make arrangements with his counsel and the litigation coordinator at his facility to appear at trial in courtroom attire.

**J.    Writs of Habeas Corpus ad Testificandum**

The Court shall separately issue writs of habeas corpus to produce Plaintiff and his inmate witnesses for trial.

**FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS FOR THE IMPOSITION OF SANCTIONS ON ANY AND ALL COUNSEL AS WELL AS ON ANY PARTY WHO CAUSES NON-COMPLIANCE WITH THIS ORDER.**

IT IS SO ORDERED.

Dated:   August 2, 2017               /s/ *Michael J. Seng*
                                     UNITED STATES MAGISTRATE JUDGE